## No. 6555.

### JOHN OSBORN VS. MICHAEL SEGRAS.

29  291
47 '532

A mortgage given to secure a real debt, on which a judgment has been given, will be maintained, although it appear that the judgment, for want of jurisdiction in the court, is void.

The judge of a court who has rendered a judgment which is null and void, can not, as creditor of one of the parties, avail himself of the nullity.

APPEAL from the Ninth Judicial District Court, parish of Rapides. *Daigre*, J., Parish Judge, acting for the District Judge, recused.

*R. J. Bowman*, for plaintiff and appellant.

*R. A. Hunter*, for defendant.

The opinion of the court was delivered by

MARR, J. On the seventeenth of May, 1869, judgment was rendered in the district court of Rapides parish in favor of Sampson against Malvina Goss, on her confession and waiver of domicile, her residence being at the city of New Orleans. This judgment was recorded on the twenty-ninth of March, 1870, in a separate judgment book, which it seems the recorder of Rapides continued to use, notwithstanding the requirement of the act of 1869, No. 95, section nine, that all mortgages shall be recorded in the same books or series of books. It was recorded as a judicial mortgage in the mortgage book on the first of July, 1874.

On the eighteenth of September, 1874, Malvina Goss, by notarial act, acknowledged that she was indebted to Michael Segras, "the legal holder, owner, and transferee," in the amount for which this judgment was rendered, and to secure the payment she specially mortgaged to him a lot in the upper suburbs of Alexandria. This act was recorded in the book of mortgages on the seventeenth of January, 1875.

John Osborn recovered judgment against Malvina Goss in the Sixth District Court for the parish of Orleans on the twelfth of April, 1873, which was recorded on the thirty-first of May, 1873, in the same separate judgment book, and, on the twenty-seventh of July, 1875, it was recorded as a judicial mortgage in the mortgage book in the office of the parish recorder of Rapides.

Execution issued on this judgment, under which the sheriff seized, and, on the sixth of November, 1875, offered for sale the lot specially mortgaged to Segras. Before the day of sale Segras filed a third opposition, setting up his mortgage and asserting his right to be paid by preference out of the proceeds of the sale about to be made. Osborn bid more than two-thirds of the appraisement, but the sheriff refused to adjudicate the property, because of this opposition, and because the amount bid was not sufficient to discharge the mortgage in favor of Segras.

Osborn answered this third opposition; and he alleged the nullity of

the special mortgage on the ground that the judgment which it was given to secure was void for want of jurisdiction *ratione personae.* He also charged that the recorder had interpolated the words, "*and known as part of lot four, square twenty-two,*" which were omitted in recording this mortgage, and that this interpolation by interlining was after Osborn's judgment was recorded; that is, after the twenty-seventh of July, 1875.

Osborn also took a rule on the sheriff to compel him to make the adjudication and to convey the property to him in accordance with his bid; and he took a rule on Segras and the recorder to show cause why the alleged interpolation should not be erased.

The sheriff answered that he could not make the adjudication, because the amount bid was not sufficient to discharge the senior special mortgage in favor of Segras, and he acted and relied upon articles 683 and 684 of the Code of Practice.

The recorder and Segras answered separately, but to the same effect, substantially, that the mortgage was filed for record in the office of the recorder on the seventeenth of January, 1875; that in copying into the mortgage book the recorder inadvertently omitted the words of description as stated, and when he discovered the omission he corrected the record by interlining these words as they were in the original; and they also pleaded that the mortgage took effect from the date of filing in the office for record.

The case was tried on these pleadings. The proof satisfied the judge that the alleged interpolation was made before the recording of Osborn's judgment, and that it was properly made to correct a mere clerical error and omission. He accordingly dismissed the rules, and Osborn appealed. The appeal was dismissed on the ground that the appraised value of the lot in controversy was not sufficient to give this court jurisdiction; and this suit was brought immediately after the appeal was dismissed.

The petition sets up the same grounds taken by plaintiff in the two rules just mentioned: the nullity of the judgment of the district court of Rapides against Malvina Goss, because her domicile was at the city of New Orleans; the consequent nullity of the mortgage in favor of Segras, and the fraudulent interlineation of the words omitted in recording the mortgage, without which there would have been no description of the property mortgaged.

The petition also charges that this mortgage was given by Goss on the eve of her marriage with Segras, for the purpose of shielding her property against the pursuit of petitioner and preventing his collecting his judgment.

The prayer is that the judgment in favor of Sampson against Goss, "now owned by said Segras as transferee," be declared an absolute

nullity; that the special mortgage given to secure its payment be also declared a nullity, and that petitioner's judicial mortgage be declared superior to said pretended mortgage.

Defendant pleaded the exception *res adjudicata*, and he introduced the record and proceedings in Osborn vs. Goss in support of his plea. The exception was maintained and the suit dismissed, and Osborn appealed.

All that is set up in this petition touching the nullity of the judgment and of the mortgage and the interpolation of the words omitted in recording the mortgage was passed upon finally in the judgment on the rules in Osborn vs. Goss, and that judgment not only declared the mortgage in favor of Segras to be valid, but that it had been so recorded as to give it superiority of rank and privilege over the judicial mortgage of Osborn. We have no authority to disregard that judgment or to open the questions which it settled and determined.

We may add that the nullity of the judgment for want of jurisdiction would by no means involve the nullity of the mortgage given to secure the debt for which that judgment was rendered. It has not been suggested that Malvina Goss did not actually owe Sampson the amount for which the judgment was rendered, and this indebtedness was ample consideration for the mortgage without regard to the judgment.

Counsel for appellant says in his brief that there is sufficient evidence in the record to enable this court to decide the case upon the merits, and he expresses the hope that we will end this litigation. We infer from this that he attaches no importance to the only new matter set up in this suit, the alleged object of Goss in giving the mortgage in favor of Segras to shield her property from the pursuit of plaintiff. As the case was tried on the exception there was no opportunity for offering proof of this allegation, and if we deemed it material we would remand the cause. But in the view we take of the case this allegation, if proven, would not influence our judgment, and we eliminate it as of no value or significance.

We think the plaintiff is concluded on all the real determining points by the judgment on the rules in Osborn vs. Goss; but if there could be any doubt on that subject there are facts disclosed by the record which we can not ignore or pass *sub silentio*, which were not noticed by counsel on either side, and which we consider fatal to the pretensions of the plaintiff.

John Osborn, the plaintiff, was judge of the district court of Rapides, and he rendered and signed the judgment in favor of Sampson vs. Goss. The petition in that case stated that defendant resided at the city of New Orleans, and she expressly waived domicile in her confession of judgment. The most casual reading of the pleadings would have exposed to the judge his utter want of jurisdiction, and the absolute nullity of the judgment which he rendered and signed.

In Jones vs. Morgan, 6 An. 631, plaintiff had been judge of one of the district courts, and he had rendered a judgment separating Morgan and his wife in property and dissolving the community between them. This judgment was manifestly collusive, a fraud upon creditors, and was rendered at the request of the parties upon no other evidence than their acknowledgments in open court. It was a voluntary separation of property by the mere agreement of the parties, which the law declares to be null "both as respects third persons and the husband and wife between themselves." C. C. 2427 (2401).

Plaintiff was a creditor of Morgan and of his succession, and he brought suit against the widow and heirs to subject the property in the hands of the widow to the payment of his debts. He based his right on the nullity of the judgment of separation which he had rendered while he was judge, and which he alleged was collusive and fraudulent. There was no element of nullity wanting; but this court said other persons might avail themselves of the nullity, but the judge who rendered the judgment could not, and whatever might be its effect as to others it was conclusive as to him.

The judge is bound by his oath of office, by his solemn obligations and duty to the public, to administer the law, and he is actively violating his duty when he takes cognizance of a cause and renders judgment without jurisdiction as well of the parties as of the subject matter in controversy. He may do no harm to the defendant who confesses judgment, but it is certainly deluding the plaintiff to render a judgment in his favor which is a mere nullity and which can not be enforced. Judgments import absolute verity; they are accepted as truth itself, and the judge who renders a judgment gives all the assurance which attaches to his official character, of his authority and jurisdiction in the cause, of the truth of the hypothesis of fact upon which the judgment is based, and of his faithful application of the law to the facts. We can not permit a party to invoke for his personal pecuniary benefit and advantage the nullity of a judgment rendered by him in his public official capacity; and he must be held to all the effects and consequences of that judgment precisely as if there were no cause of nullity alleged or existing.

The conventional mortgage of the eighteenth of September, 1874, did not place the property of Malvina Goss more effectually beyond the reach of plaintiff's judicial mortgage than the recording on the first of July, 1874, of the judgment rendered by plaintiff had already done six months before the conventional mortgage was recorded. Plaintiff can no more deny or controvert the legal effect of the recording of that judgment than he can attack the judgment itself by alleging his want of jurisdiction and consequent violation of his official duty. The judgment may be absolutely void, and the recording of it without effect as to all other

Osborn vs. Segras.

persons, but the judge who rendered it stands pledged to its legality and validity, and he can not be heard to say that it is not valid or to question its effect when recorded as a judicial mortgage so far as his personal rights and interests are concerned. The effect, as to him, is that the judicial mortgage resulting from the recording of this judgment outranks the judicial mortgage under which he claims, and that it gives to Michael Segras a priority and preference over him without regard to the conventional mortgage to which the same effect was given by the judgment on the rules in Osborn vs. Goss.

We think the judgment appealed from does justice between the parties, and it is therefore affirmed with costs.