## No. 8408.

VICTORIA H. DICKSON AND HUSBAND VS. HANNAH P. DICKSON ET ALS.

A lease of property granted by the usufructuary expires when the usufruct ceases, whether such termination is caused by the death of the usufructuary, or by a judgment of court decreeing the loss of the usufruct for abuse.

The interest of the widow in community is residuary and can only be ascertained and defined after a settlement of the community. It follows, therefore, that mortgages granted by her before the liquidation of the community, cannot affect her obligation, upon the extinguishment of her usufruct, to account to her co-proprietors, and cannot prejudice the rights of the latter upon the entire mass of the community.

A judgment cannot be disturbed on appeal between the Appellees and, therefore, as to them, remains *res judicata* independently of the action of this Court.

The judicial averments of a married woman, in her suit against her husband, of the sums received by him from her father for her account, estop her from afterwards disputing such sums in a partition suit between her co-heirs.

The donation made by the father to the common child, out of the community property, will be considered as made by both husband and wife when, after the father's death, the mother accepts the community. Previous Decisions affirmed.

In a partition suit, the heirs of age have an absolute right to demand a sale for cash for their shares of the common property.

A PPEAL from the Second Judicial District Court, parish of Bossier. *Drew, J.*

Transferred to New Orleans by consent of parties. The original opinion was delivered at Shreveport, and the opinion on the Rehearing at New Orleans.

*Looney & Elstner* for Plaintiffs and Appellants.

*Richard W. Turner* for Mrs. Hannah P. Dickson, Defendant and Appellant :

First—The widow in community is the owner of one-half of the community property at the moment of the opening of the succession, subject only to the payment of the succession debts. C. C. Art. 2046; 3 An. 362, 489 ; 4 An. 389 ; 1 R. 149; 10 R. 13; 33 An, 584. ·

Second—Donations *inter vivos* or *causa mortis* cannot exceed two-thirds of the property of the disposer, having no children, leaving a father or mother. C. C. Art. 1494.

Third—A donation of community property by the husband to one of the children must be collated, one-half to the father's succession and one-half to the mother's. 5 N. S. 230, Baillio vs. Baillio.

Fourth—When a debt of a co-heir, co-proprietor or co-partner, if not due to the succession, the community, nor the partnership, its payment cannot be demanded in a partition of the succession. C. P. Art. 3.

Fifth—The heirs have no legal mortgage or privilege on the property of the administratrix the heirs are but ordinary creditors. C. P. 294 ; 12 R. 172.

*J. D. Watkins* for other Defendants and Appellants.

*Lowry & Vance* for Palmer Dickson, Defendant and Appellant :

First—Where the widow and heirs live upon succession property and enjoy it in indivision their possession is apparent, even though an administrator has been appointed. In such a case the administrator is simply the agent of the widow and heirs. His possession is that of the heirs.· 12 An. 868, concurring opinion of Merrick, C. J.

Second—Where the widow and heirs agree that the family and property shall remain as the father left them, the property does not pass into the exclusive possession and become absolutely, that of the widow as usufructuary. 31 An. 741.

Third—Under such an understanding, if the heirs of age take and are allowed what they · wish of the succession funds, the amounts so taken must be deducted from their shares on final partition. 31 An. 741 ; 32 An. 1150.

Fourth—And if, under such a state of circumstances, an heir takes and is allowed of the succession funds, an amount equal to an entire share of the estate, he is excluded from participation in a division of the remaining property on final partition.

Fifth—A divestiture of the usufruct annuls and cancels all leases and special mortgages imposed upon the usufruct property by the usufructuary. C. C.

Sixth—The usufructuary owes to the heirs a support and educational advantages befitting their station in life.

Seventh—The gift of a draft upon a merchant for money is a manual gift, and is subject to no other formality than a real delivery. C. C. 1539; 22 An. 97.

Eighth—A judgment in favor of an heir, on opposition to an account filed by the administratrix, who is widow in community, operates as a judicial mortgage against her interest in the community real property, and, also, against the interest inherited by her, in the succession half, from one of her deceased children. 12 An. 864.

Ninth—Such a judgment enures only to the benefit of the heirs who oppose. 20 An. 360.

The opinion of the Court was delivered by

FENNER, J.   This is a suit for partition to which the surviving widow and partner in community of Michael Dickson, deceased, and all the heirs of Michael Dickson, are parties.

Michael Dickson died in March, 1865, leaving a large succession of real and personal property, the whole of which was acquired during his marriage with Hannah P. Dickson, and, therefore, belonged to the community of acquests and gains subsisting between them.

Michael Dickson died intestate, and his widow opened his succession and was appointed administratrix of his estate, and also became the legal usufructuary of the entire estate.

Michael Dickson left the following heirs:

1st.   Victoria H. Dickson, now Mrs. Thomas, the present plaintiff.

2nd.   Michael A. Dickson, now dead, and represented here by Mattie L. Dickson, natural tutrix of his children.

3rd.   Lizzie Dickson.

4th.   Mary E. Dickson, now Mrs. Pillow.

5th.   Emma Dickson, now dead, and here represented by Henry Cnarnock, Executor.

6th.   M. Hugh Dickson, now dead, and represented by W. L. Dickson, executor.

7th.   Palmer Dickson.

Numerous claims and counter-claims are presented by the several parties for themselves and against each other; from the judgment rendered by the District Court *every party* has appealed, and an infinite number of perplexing legal questions have been raised and argued by the numerous counsel.

We shall endeavor, with clearness and brevity, to simplify the case as much as possible by settling the contested questions and laying down the principles which, in our opinion, should govern the partition.

## I.

The first question to be settled is the termination of the widow's usufruct, which is a necessary condition precedent to the partition.

The legal usufruct expires on the death of the usufructuary.   C. C.

606. Or it may be judicially extinguished, in consequence of the abuse of the enjoyment thereof by the usufructuary. C. C. 621.

The record exhibits the proceedings and judgment rendered in a suit for destitution of this usufruct, to which all parties to this suit were originally parties. That judgment was rendered on January 11th, 1881, and decrees " that the usufruct of the defendant, Hannah P. Dickson, heretofore held and enjoyed by her on the community property of the succession of her late husband, Michael Dickson, do terminate, and all her rights as usufructuary are hereby annulled and cancelled."

The suit was based on alleged abuse of the usufruct. Although Mrs. Dickson consented to the judgment, yet evidence was taken in the case, and the judgment is based not only on the consent but also " by reason of the law and evidence being in favor of the plaintiff."

The only one of the present parties having the slightest ground for disputing the binding force of this judgment is Henry Charnock, executor of Emma Dickson, deceased. Emma Dickson had herself been a party, but died in the interval between the bringing of the suit and the rendition of the judgment; and there seems to have been no revival of the suit as to him. Charnock appears simply as executor of the will of Emma Dickson. By that will Lizzie Dickson, who is unquestionably bound by the judgment, is made sole legatee of all rights in and to the Dickson estate. Further, Charnock, executor, in his answer in the present case, joins in the demand for partition, which is, in itself, an acknowledgment of the termination of the usufruct. For these reasons, we shall treat him as bound by the judgment.

II.

During the pendency of her usufruct, Mrs. H. P. Dickson had executed sundry leases of community real estate in favor of certain of the heirs, the terms of which have not yet expired, and which the other heirs demand should be decreed extinguished.

Art. 555 C. C. seems conclusive on this question. It provides that " the usufructuary may enjoy by himself, or lease to another, or even sell or give away his right, but all the contracts or agreements which he makes in this respect, whatever duration he may have intended to give them, cease of right at the expiration of the usufruct."

No distinction is suggested in the law between the cases of expiration by death and of expiration by judicial extinguishment for abuse; and the language of Art. 621 seems to leave no doubt that in the latter case, "the owner shall re-enter into the enjoyment of the property." We agree, therefore, with the District Judge that the leases terminated at the date of the judgment extinguishing the usufruct, viz., January 11th, 1881.

### III.

Much learning and ingenuity are expended in the discussion of the validity and effect of certain conventional and judicial mortgages which were created by or against Mrs. H. P. Dickson, upon her interest in the community property. In the view we take of this case, these questions are of no importance. They are sufficiently disposed of by the following considerations:

The interest of the widow in community is residuary only, resembling the interest of an individual partner in the partnership property. It can only be ascertained and defined after a settlement of the marital partnership.

From the date of Michael Dichson's death, this entire estate, movable and immovable, has belonged to Mrs. Dickson and the heirs of Michael Dickson as partners in community. As legal usufructuary as well as administratrix, she has had the use and administration of the entire property, entitled under the law to all the revenues for herself, but under the obligation, at the termination of her usufruct, to produce, in such condition as the law requires, the property susceptible of perfect usufruct, and to account for that used or consumed by her in the exercise of the imperfect usufruct. All the property or its equivalent held by her in indivision, and administered and used by her, must enter into, and form the basis of, the settlement and partition; the debts due by the partnership must be paid; the accounts of the partners must be settled, and their respective interests ascertained, and according to these interests the partition must be made.

The residuary interest of the widow, thus finally ascertained and settled, is the only source to which her individual creditors, whether secured by mortgage or not, can look for satisfaction of their claims.

Inasmuch as, under these circumstances, the mortgages referred cannot affect the obligation of the administratrix and usufructuary to account to her co-partners, and cannot prejudice the rights of the heirs to have the interest coming to them under such accounting satisfied out of the entire mass of the community, it follows that the validity or invalidity of said mortgages are matters exclusively between Mrs. Dickson individually and the mortgagees, and do not figure as factors in this partition.

### IV.

As to the amount for which the widow is responsible on account of the cotton and other movable effects of the community used and consumed by her, we find that matter fully settled by a judgment of the late parish court of Bossier parish, rendered in the proceeding entitled Olympe Boisse and Husband vs. H. P. Dickson, Administratrix, and others.

In that suit an accounting was had, to which all the parties to the present suit were parties, and a final judgment was rendered decreeing that the widow was responsible for the whole of said personal property; fixing the gross value thereof at $146,690; adjusting the credits to which she was entitled on account of community debts and charges at $10,934 32; leaving a net residue of $136,055 68 of community funds, for one-half of which she was adjudged to be accountable to the heirs at the termination of her usufruct, viz: the sum of $68,027 84. The only person who ever appealed from this judgment was Olympe Boisse, and although in the opinion rendered by this Court on said appeal, certain expressions are found hostile to the correctness of the judgment of the parish court, that judgment was not, and could not have been, disturbed as between the widow and heirs, who were all appellees only. It has, therefore, acquired the force of the thing adjudged, and cannot be disturbed by us.

## V.

The judgment just referred to also settled that the $68,027 84, for which the widow was responsible to the heirs, was to be divided primarily between the seven heirs, giving to each one $9718 55; and upon further issues properly joined, it was also determined that M. Hugh Dickson and Palmer Dickson had each received from their mother, on account of his share, the sum of fifteen hundred dollars; and that Michael A. Dickson had received from her, on account of his share; the sum of four thousand dollars. On these questions, also, that judgment is final; and the widow will be entitled to reimbursement of these advances out of the shares coming to these heirs.

## VI.

As to the share of Mary E. Dickson, now Mrs. Pillow, we consider that the judgment of this Court upon the appeal taken by Olympe Boisse in the above case, settles conclusively that the widow had advanced to her a sum greater than her share in the entire succession, thereby extinguishing her claim. The effect of this is to entitle the widow to receive the entire share which would have come to Mrs. Pillow in satisfaction of the advances made to her as aforesaid.

## VII.

As to the remaining heirs, Mrs. Thomas, Lizzie, and Emma Dickson, the judgment left open the question as to what, if any, advances had been made to them by their mother on account of their shares. Whatever may be the real truth of the matter, we find no sufficient evidence in this record to establish advances made to either of them with sufficient certainty to form the basis of a judicial allowance. No useful purpose would be served by stating and discussing the particular testimony

on the subject. It is sufficient to say that we have carefully weighed the evidence and find it too vague, contradictory and uncertain to overcome the positive statement of the widow herself that she made no such advances.

### VIII.

As to the revenues of the property which had been leased to Lizzie Dickson, Mattie L. Dickson, tutrix, Palmer Dickson and M. Hugh Dickson, which have been retained by them since the termination of their leases by the extinguishment of the widow's usufruct, it is clear that they must account to the community for the rents and revenues thereof, to be ascertained under proper proceedings for that purpose.

### IX.

As to the collations to be made by the several heirs on account of advances received from their deceased father, we have carefully considered the testimony, and content ourselves with saying that it does not establish the fact of such advances with sufficient certainty to enable us to decree the collation thereof, except in the case of Mrs. Thomas. Her judicial allegations in the suit against her husband for separation of property, which she is conclusively estopped from disputing, establish that she received from her father the sum of eight thousand dollars. If injustice be done in requiring her to collate, while exempting other heirs, it is attributable to the fact that she has herself furnished the conclusive proof of the advance to her ; while the charges sought to be enforced against her co-heirs are sustained only by uncertain and contradictory evidence of ancient transactions between persons now defunct, whose relations in business affairs were such as to leave the true character of the transactions inextricably veiled in doubt and uncertainty. To the judicial mind things not proved must be treated as things which do not exist.

We consider it sufficiently proved, however, that all the property of Michael Dickson was community property, and that the advance made by him to Mrs. Thomas was made out of that community. Mrs. Dickson having accepted the community, we consider the doctrine well settled that such a donation "is esteemed a donation of both parties, and must be collated, one-half to the father's, and one-half to the mother's succession." Succession of Montegut, 2 An. 634 ; Baillio vs. Baillio, 5 N. S. 228.

She is, therefore, now called on to collate only one-half the donation, and will collate the other half only to the succession of her mother.

### X.

M. Hugh Dickson and Emma Dickson having left no descendants, there can be no doubt that their mother is a forced heir to one-third of

their respective estates. Inasmuch, however, as their successions have been opened, and are under administration by duly qualified executors, and as the forced portion is only ascertainable after settlement of the successions, we cannot make a partition thereof in this case, but will award their entire shares to their respective representatives, reserving the widow's rights to assert her claims as forced heir in said successions.

## XI.

The evidence satisfies us that the partition of the immovables can only be satisfactorily effected by sale ; and we see no reason to disturb the terms and conditions prescribed by the District Judge.

## XII.

We think the sums allowed to L. M. Nutt, Esq., for professional services to the administratrix, and to B. F. Fort, Esq., as curator *ad hoc*, are proper charges against the active mass of the succession.

## XIII.

We think the widow is entitled to her commissions of $4292 42, which will lessen by that amount the sum of $136,055 68, for which she is indebted to the community, leaving so due $131,763 26.

## XIV.

Before proceeding to frame our decree, after having thus settled the various questions raised by the parties, we will now make a general *résumé* of operations by which this partition should be effected.

Inasmuch as it involves a partition of the whole community, between the widow and the heirs, as well as between the heirs *inter se,* the active mass should be composed of the entire community estate, which consists of :

1st. The amount for which Mrs. Dickson is responsible on account of cotton and other movables, as heretofore determined, viz: $131,763 26.

2nd. The notes and cash received from the sale of the immovables.

3rd. The revenues due by Lizzie Dickson, Mattie L. Dickson, tutrix, Palmer Dickson, and W. L. Dickson, executor, for rents and revenues of property formerly leased by them, and used and occupied by them since January 11th, 1881; but these items being as yet undetermined, they will be provided for in the decree without figuring in the present partition.

This active mass should first be equally divided between the widow for one-half and the heirs for the other half.

The half due the heirs should then be divided into seven equal parts, and one-seventh assigned to each heir.

The seventh thus falling to Mrs. Pillow should then be transferred and added to the share of the widow as owner thereof.

87

From the seventh falling to Palmer Dickson, should then be deducted the sum of $1500; from that falling to M. Hugh Dickson should be deducted the sum of $1500, and from that falling to Mattie L. Dickson, tutrix, should be deducted the sum of four thousand dollars; and these several sums should be transferred and added to the share of the widow in reimbursement of the sums advanced by her to these several heirs.

From the share of Mrs. Thomas should be deducted six-sevenths of four thousand dollars, and one-seventh should be carried and added to the share of each one of the other six heirs.

These operations will constitute the shares coming to the widow and the several heirs respectively, exclusive of the unsettled rents and revenues above referred to.

It is, therefore, ordered, adjudged and decreed that, in so far as the judgment appealed from declares the leases named therein to be extinguished and avoided after the 11th day of January, 1881, and condemns the lessees therein named to pay and return to the succession the rents and revenues of the lands and property from that date; and in so far as the said judgment orders the sale of the property therein described and fixes the terms and conditions thereof, and appoints and defines the powers of experts to aid in effecting said sale; and in so far as the said judgment orders a partition of the entire mass of the succession of Michael Dickson and names the notary and the experts who are to make such partition; the judgment appealed from be now affirmed; and that, in all other respects, the said judgment be annulled and set aside; and, proceeding to render such further judgment as should have been rendered by the lower court, it is now ordered, adjudged and decreed that Hannah P. Dickson, administratrix and widow in community, be recognized and declared to be a debtor of the community subsisting between herself and the heirs of Michael Dickson in the sum of one hundred and thirty-one thousand seven hundred and sixty-three dollars and twenty-six cents. That the notary public, in making the partition, shall proceed as follows : He shall form the active mass of the community, to be composed 1st, of the $131,763 26, due as aforesaid by Hannah P. Dickson, and 2d, of the total amount of cash and notes resulting from the sales of property herein ordered; from said mass he shall first deduct the sum of fifteen hundred dollars to be paid to L. M. Nutt, Esq., for attorney's fees herein allowed, and the sum of fifty dollars to be paid to B. F. Fort, Esq., as curator *ad hoc*, and the sum of two hundred and fifty dollars to be retained for payment of all costs of this proceeding; he shall then divide the remaining mass into two equal shares, one to be assigned to Hannah P. Dickson, as partner in community, the other to be assigned to the heirs of Michael Dickson, the deceased partner; he shall then divide the last named share or half, into seven equal por-

tions to be assigned respectively to the said heirs, viz : to Victoria H. Dickson, now Mrs. Thomas, one-seventh; to Lizzie Dickson, one-seventh; to Henry Charnock, executor of Emma Dickson, one-seventh; to Mattie L. Dickson, tutrix of M. A. Dickson's heirs, one-seventh; to W. L. Dickson, executor of M. Hugh Dickson, one-seventh; to Palmer Dickson, one-seventh; to Mary E. Dickson, now Mrs. Pillow, one-seventh; he shall then transfer and add to the original share of Mrs. H. P. Dickson, the one-seventh share assigned as above to Mary E. Dickson, now Mrs. Pillow, thus extinguishing her interest; he shall then subtract from the shares of Palmer Dickson and M. Hugh Dickson respectively, the sums of fifteen hundred dollars each and add the said sums to the share of Mrs. H. P. Dickson; he shall then subtract from the share of Mattie L. Dickson, tutrix of M. A. Dickson's heirs, the sum of four thousand dollars, and will transfer and add the same to the share of Mrs. H. P. Dickson; he shall then deduct from the share of Mrs. Victoria H. Thomas, six-sevenths of four thousand dollars (which sum she is hereby condemned to collate to the heirs of Michael Dickson), and of said six-sevenths, he shall transfer and add one-seventh to the share of each of the other heirs of Michael Dickson, except Mrs. Mary E. Dickson Pillow, whose seventh shall be added to the share of Mrs. Hannah P. Dickson. The shares resulting to each party from the above operations will constitute the ultimate interest of each under this partition. It is further decreed that in case Mrs. H. P. Dickson shall fail or refuse to pay or deliver for actual partition the sum of $131,763 26 adjudged to be due by her to the active mass of the community, her ultimate share as above ascertained shall be compensated and extinguished *pro tanto,* by said sum and amount, and she shall take so much less.

It is further ordered, adjudged and decreed that Lizzie Dickson, Mattie L. Dickson, tutrix, W. L. Dickson, executor, and Palmer Dickson, owe to the active mass of the community the rents and revenues of lands formerly leased by them respectively, and used and cultivated by them subsequent to the 11th of January, 1881; that this cause be remanded to the lower court for the purpose of further proceedings in order to ascertain and liquidate the sums so due by them respectively, without, however, delaying the execution of this judgment, and the partition in other respects; and said sums when ascertained shall form part of the active mass of the community, and shall be distributed in the same manner and subject to the same principles herein prescribed for the partition of the other parts of said active mass, and should the said amounts not be ascertained prior to the completion of the partition herein ordered, the judge of the District Court, before allowing the said parties to take the several shares allotted to them in the said partition, shall require them either to leave in the hands of the court a sufficient

amount of said several shares to secure the payment of their said indebtedness when ascertained, or otherwise to secure the same to the satisfaction of the court, and that the costs of the lower court and of this appeal be paid out of the common fund of the succession.

## ON APPLICATION FOR REHEARING.

The only complaints made of our decree are the following :

1. Mrs. H. P. Dickson complains that there is a seeming ambiguity in our decree as to the effect given by us to the judgment of the Bossier District Court of 11th January, 1881, destituting her of her usufruct.

The only occasion we had for referring to that judgment, in this case, arose from the fact that the destitution of the usufruct decreed thereby was a necessary condition precedent to the maintenance of this suit for partition. Therefore, our allusions were confined to this element of that judgment. It should be needless to say that we neither made or intended any discrimination against, or reflection upon, the validity of that judgment in any other respect.

2. We are asked by several of the parties to amend the decree so far as it affirms that portion of the judgment of the District Court, directing the sale to be made for cash to the extent of the interests of some of the heirs and on terms of partial credit as to the interests of the. remaining heirs.

The right of heirs of age and present to require the sale to be made for cash " for a sufficient sum to cover the interests coming to them," seems to be quite absolute and unqualified under the terms of C. C. 1342. In absence of any complaint by those heirs themselves, we must presume that they made the demand and that the judge acted upon it.

3. In view of the fact that a part of the property is situated in the parish of Caddo, and part in the parish of Bossier, we are asked to modify that part of the decree which orders the whole of the property to be sold, at the same time, by the sheriff or an auctioneer of the parish of Bossier. It is reasonably urged that the property should be sold in the parish where it is situated and on different days. We acquiesce in the propriety of this prayer and shall amend our decree accordingly ; and would have so ordered in our first decree, had the point been urged.

It is, therefore, ordered that so much of our decree as affirms that portion of the judgment appealed from which orders that " the entire property, real and personal, belonging to the succession of Michael Dickson, be sold by the sheriff of Bossier or any auctioneer in Bossier parish," be now annulled and set aside ; and it is now ordered and decreed that the above cited portion of the judgment appealed from be amended so as to order that the property situated in the parish of Bossier be sold by the sheriff or any auctioneer of said parish, and that the property

situated in the parish of Caddo be sold by the sheriff or any auctioneer of said parish, and that the sales in said respective parishes be made upon different days and with sufficient interval between them to enable bidders to attend both sales.

And it is ordered that, in all other respects, our former decree remain undisturbed.

The Chief Justice takes no part in this decision, not having participated in the original opinion.