No. 10,053.

SUCCESSION OF PIERRE DÉJAN—JULES VICTOR AND ARTHUR DÉJAN vs. MRS. JOSEPHINE SCHAEFFER,· WIDOW PIERRE DÉJAN.

The collateral attack by simple heirs on the validity of a judgment of separation of property between a deceased husband and his surviving wife, must be restricted within the same limits which would circumscribe an attack made by the husband himself, if he were alive.

·Creditors and forced heirs alone, in a collateral manner, justify an inquiry into the validity of such judgments on their merits.

·Simple heirs at law derive their rights from ]ʰthe husband or wife, as the case may be, and can institute no attack and no inquiry which would not be opened to the deceased, under whom they claim, if he or she were alive.

In such a case the inquiry must be restricted to an examination to ascertain whether the court which rendered the judgment had ljurisdiction, and whether it exercised that jurisdiction according to the forms of proceeding established by law.

·To create a community sought to be dissolved at the instance of the wife, there must be a

lawful marriage, but it is immaterial whether the particular marriage declared upon be valid or not, provided it be shown that there was a lawful marriage between the parties.
All the property purchased by a wife duly separated in property from her husband, after the date of the judgment [of separation, becomes her separate estate, to which the husband or his heirs at law can lay no claim.

APPEAL from the Civil District Court for the Parish of Orleans, *Tissot*, J.

*D. C. & L. L. Labatt* and *Thos. J. Semmes* for Plaintiffs and Appellants:

1. Federal authority is powerless to control prohibited marriages between white and black citizens of a State. 34 Ann. 269. Therefore, Art. 95 C. C. 1825, preserved its original force until November 14, 1870, so that a civil marriage on the 18th of February, 1869 was null and void and no community resulted, to be dissolved by any court of justice. Succ, Colwell, 34 Ann.; 4 Wash. 371; 12 Wall. 430 · 1C Wall. 7C; 1 Woods, 537, 169; *id* 80; 48 Cal. 36, 48 Ind. 327; 21 Ohio St. 198; 53 Ala. 150; 42 Ala. 125, 525; 106 U. S., Pace vs. Ala. 585; 27 Vt. 149; 11 Pet. 102.

2. The Act of 1868, No. 210, relative to ecclesiastical marriages, is exceptional, and did not authorize justices of the peace to confirm religious marriages between persons of opposite color. Neither did the State Constitution of 1864, 1868, the Civil Rights Bill of 1866, or the 14th Amendment, contemplate a repeal of that prohibition. By that act, a confirmation of a religious ceremony established a retroactive community from the date of the ecclesiastical marriage, unless other stipulations are "embodied in the act," and no subsequent separate act of the husband can produce a modification of the community. (Act of '68, No. 210.) Moreover, Act No. 210 is pregnant with a legislative affirmation that Art. 95 was not previously repealed by Federal authority or State Constitution, as held by the court *a qua*. 34 Ann. 269. Succ. Colwell.

3. "When the community of acquets and gains is dissolved by death, the respective interests of the survivor and of deceased spouse attach, at the moment of the dissolution, to the property of the community. This right will be recognized if sued for in the proper action, and may be enforced at any time, when demanded by a partition of the property or otherwise, even when burdened with the usufruct in favor of the survivor." Tugwell vs. Tugwell. 32 Ann. 849; 5 Rob. 12.

4. "When the surviving spouse files an answer denying the existence of a community and asserts title to the property withheld from the succession by separate acquisition, after its dissolution upon a judgment of court, and relies solely on that record, as her muniment of title, the proceedings and record are not "*res judicata*," and their verity must be supported by satisfactory evidence *aliunde*. Such [a judgment is at most the beginning of proof, and plaintiff is bound, in such suits, to reverify clearly the facts on which it was based." 19 Ann. 97, 250; 10 Ann. 87; 8 N. S. 459; 4 L. R. 257, 422; 11 R. 536; 12 L. R. 296; 4 Ann. 135; 31 Ann. 405; 4 Ann. 71; 11 R. 536; 13 Toullier, Nos. 69, 73 and 75; 11 Ann. 697; 8 N. S. 240; 4 R. 335; 14 Ann. 684; 15 Ann. 33, 81; 17 Ann. 113; 23 Ann. 164; 24 Ann. 280.

5. "The cases in which the *onus* is on the judgment creditors are those in which wives have obtained judgments against their husbands. They are exceptions to the rule that he who alleges fraud must prove it." 2 Ann. 544; 6 Ann. 631; 1 Rob. 431; 10 Ann. 272; 7 Ann. 93, Webb vs. Peet.

6. Where a wife confirms a judgment by default, against her husband, which presents on its face all the concomitants and *indicia* of a collusive voluntary separation, prohibited by the Civil Code, it is null and [void, even as between the "parties themselves." 11

Ann 697; Biret Null, 1 Vol. 146, 147, 149, 376, 377; 7 Toullier-Duvergier, p. 13; 14 Ann. 619; R. C. C. Art. 2427 (2401); C. N. 1443; 9 Ann. 168; 10 Ann. 688; 15 Ann 8I The Code says, to be valid, "It can only be ordered by a court of justice after hearing all parties." R. C. C. 2427 (2401).

7. The marital action of the wife is not accorded or governed by the Code of Practice, but is provided for in the Civil Code, and is controlled by different rules from ordinary suits, and is to be pursued *bona fide* on pain of nullity. Arts, 2428, 2427, 1429 R. C. C. Execution cannot issue until after publication of the judgment for three months, in order to exclude the suspicion of collusion or fraud. 12 Merlin Rep. pp. 414, 417, 419.

8. Where a litigant, in a petitory action, elects to stand upon a title of acquisition, she cannot be allowed, during the progress of the trial on that issue, to shift her ground and set up title by inheritance, in order to prostrate and defeat the action of the law. 4 Ann. 416, Conner vs. Gridley.

9. Since the Act of 1844, and in its incorporation as Art. 915, R. C. C., the former construction of Art. 923 (O. C. 917), that it was governed by the exception in Art. 924 (918) has been changed and modified so that a surviving spouse no longer outranks natural brothers, but in lieu thereof holds such share in usufruct, subject to two conditions, death or second marriage, and the naked title vests in the natural brothers and sisters or their descendants immediately. Art. 923 (917); Art. 915 R. C. C., new Article.

10. The last expression of legislative will, in Act of 1844 and Art. 915, R. C. C., must predominate over the jurisprudence previous to its passage, and this Court is bound by the unambiguous terms of that statute, and discharges firmly its highest duty in the administration of justice when it enforces its plain words. 9 Ann., Succ. of Lee; Tajasco case, 6 L. R.; 5 Rob. 12.

*Frank D. Chretien* and *P. E. Theard & Sons* for Defendant and Appellee :

After the adoption of the Constitution of 1868, white and colored persons could inter-marry. The prohibition to that effect, contained in Art. 95 of the Civil Code of 1825, being obliterated by said Constitution.

A judgment of a competent court cannot be enquired into collaterally ; its decrees directly on the points reviewed are, as a plea of evidence, conclusive between the same parties, or those claiming under them, for the same thing, and can be corrected, if erroneous, only by a direct action in nullity or by appeal.

A judgment of separation of property and of dissolution of the community, obtained by the wife in 1876, cannot be attacked by persons claiming to be collateral heirs of the husband after his death in 1886. On those points the judgment is final and irrevocable, and became so by the silence of the husband during his life time and by the uniform recognition of the validity of said judgment by both parties, in many acts and proceedings.

The wife is called to the inheritance of her husband before his natural brothers. The plaintiffs have therefore no interest in the succession of their natural brother. R. C. C. 917 (911); R. C. C. 919 (913); R. C. C. 924 (918); R. C. C. 929 (923); Victor vs. Tagiasco's Executor, 6 L. 644; Succession of Ducloslange, 2 Ann. 98; Succession of Ducloslange, 1 Ann. 181; Manette and Virginie Duplessis vs. Betsey Young, 11 Ann. 120; Succession of Briscoe, 2 Ann. 268; Succession of Miller, 27 Ann. 574, 575.

The Act of 1844 relative to community property has not changed the order of succession. The wife inherits in full ownership, and not in usufruct only, where there are no lawful relations. Succession of Lee, 9 Ann. 398; Succession of M Brinkman, 5 Ann. 27; Succession of Odille Hebert, 5 Ann. 122; Succession of Fitzwilliams, 3 Ann. 489.

The provisions of the Act of 1844 are merged in Articles 915 and 916 of the R. C. C., under

the title of irregular successions. The whole of the chapter treating of irregular successions is one law. There is no conflict between its provisions. In default of lawful relations, the wife is called first to the succession of her husband, the natural relations next, and the State after. There is especially no conflict between Article 915 and Article 924 of the R. C. C. They provide for different cases: Succession of Ducloslange, 2 Ann. 98; R. C. C. 915 to 933; Layre vs. Pasco, 5 R. 11 and 12; Laclotte's Heirs vs. Labarre, 11 L. 181.

But simple heirs cannot disturb a separation decreed after citation to the husband, duly published and followed by an execution, and subsequently and uniformly recognized by both parties thereto, in many acts and proceedings. Compton vs. Maxwell, 33 Ann. 685; Brown vs. Stroud, 34 Ann. 374; Kerwin vs. Hibernia Insurance Co., 35 Ann. 33; Chaffe & Sons vs. De Moss, 37 Ann. 186.

The decree of separation is valid; it was rendered by a competent court, after due citation; it rests on clear and positive evidence; it was published and executed according to law; even if the money demand is erroneous. the separation is good, because the wife had an industry of her own, and the chief object of a judicial separation is to emancipate her industry, to enable the wife to conduct her business, to earn a livelihood for herself and her family. R. p. 288, et seq.; Chaffe & Sons vs. Watte, 37 Ann. 324; Davock vs. Darcy, 6 R. 342; Webb vs. Peet, 7 Ann. 93; Holmes vs. Barbin, 15 Ann. 554; Penn vs. Crockett, 7 Ann. 343; Raiford vs. Thorn, 15 Ann. 81; Henderson vs. Trousdale, 10 Ann. 548; Wolf & Clark vs. Lowly, 10 Ann. 272.

A community dissolved by a judicial separation cannot be re-established in Louisiana. Ford vs. Kittredge, 26 Ann. 193 and 194.

A wife may employ her husband as clerk, agent or manager, under her immediate control and authority; the fruits of her property belong to her, not to them jointly. Miller vs. Handy, 38 Ann. 160.

In a petitory action plaintiff must make out his title; he cannot rely on the weakness of his adversary's title. Young vs. Chamberlin, 15 Ann. 454, Pritchett vs. Coyle, 22 Ann. 57.

The evidence shows that all the real estate in controversy was acquired by purchase by Mrs. Déjan since her separation, by authentic acts, in the execution of which she was authorized and assisted by her husband; and such acts cannot be destroyed by mere verbal and uncertain evidence; nor can they be questioned by the plaintiffs, who are neither forced heirs nor creditors, and who stand in the place of their deceased brother Compton vs. Maxwell, 33 Ann. 688; Kerwin vs. Hibernia Insurance Co., 35 Ann. 33; Chaffe & Sons vs. De Moss, 37 Ann. 186.

---

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiffs, suing as the natural brothers of Pierre Déjan, deceased, claim, as his only heirs at law, the naked ownership of the property belonging to him, as forming part of the community alleged to have existed between him and his surviving wife, up to the day of his death, on the 30th of October, 1886, he having left no children and no will.

The defense is that there is no property belonging to the community which once existed between Pierre Déjan and his widow; that said community was dissolved by the judgment of a competent court rendered on April 24, 1876, in execution of which the defendant bought in all the property which then stood in the name of her husband; and

that all the property, one-half of which is claimed by plaintiffs, is her own separate estate, earned, acquired and purchased by her since the dissolution of said community.

That defense prevailed below, and plaintiffs appeal.

From the record it appears that the pivotal question in the case is the alleged absolute nullity of the judgment of separation of property rendered at the instance of the wife in April, 1876.

The pertinent facts are as follows:

Pierre Déjan, who was a colored man, and Josephine Schaeffer, widow Paul Krack, who was a white woman, began to cohabit together as man and wife in 1858; and being under existing laws (O. C. C., Art. 95) incapacitated from contracting a lawful marriage, they had recourse to a religious ceremony or marriage in order to sanctify their union, which took place on September 1, 1858. On the 18th of February, 1869, they appeared before a justice of the peace and contracted what they understood, and what purported to be, a lawful marriage. But, for reasons which are not apparent in the record, the parties went before a notary public on June 4, 1869, and ratified the private or religious marriage of 1858, in accordance with the provisions of Act No. 210 of 1868.

On the same day and before the same notary, Pierre Déjan made a declaration to the effect that at the time of his marriage with Josephine Schaeffer in September, 1858, she possessed in her own right the sum of $28,000, which she had acquired during her widowhood by her industry and through lucky circumstances.

It appears that up to that time she had been employed as housekeeper or servant by a family in this city, and that subsequently she assisted her husband or consort in his labors as a small dealer in furniture, his business consisting for some time mainly in purchasing, repairing and reselling second-hand furniture.

The business prospered and was soon transformed into a considerable furniture store, carried on in the name of Pierre Dejan. But he met with reverses, and in 1876 he was heavily indebted and greatly embarrassed, in consequence of which his wife brought a suit against him, for the restitution of her personal funds, in the sum of $28,000, and for a separation of property, averring, among other allegations, her ability and desire to carry on a furniture or grocery business, and her fears of losing the fruits of her earnings through the embarrassed condition of her husband's affairs and in the confusion of his losses, resulting from speculative ventures.

After personal citation on the husband, a default on his failure to

answer, and after other due proceedings, trial and proof of the wife's demand, judgment was rendered in her favor as prayed for. After publication execution issued, and at the sale made thereunder, property of the husband, aggregating some $11,000, was adjudicated to the wife. That sale included the furniture store, which the wife has since carried on in her own name and as her separate industry, being therein assisted by her husband, who filled the functions of salesman and general clerk. In addition to the property thus and then acquired, Mrs. Déjan has since purchased considerable immovable property in her own right, as separate in property from her husband, by whom she was in every act of sale authorized and assisted.

Plaintiffs' contention is that the judgment of separation of property of April 24, 1876, is absolutely null and void, fraudulent and collusive, and that it covers a consent judgment and voluntary separation between the spouses prohibited by law, and that, therefore, the community existing between the spouses was not dissolved before the death of Pierre Déjan in October, 1886, and that all the property purchased in the name of the wife fell in the community.

The main ground of that contention is that the marriage of February 18, 1869, on which Mrs. Déjan had declared in her suit for separation of property was itself an absolute nullity, for the reason that the legal incapacity which impeded a lawful marriage between the parties had not yet been removed, and that, therefore, no community could flow from such an abortive attempt of marriage, as without a lawful marriage there can be no community of acquets and gains. Plaintiffs then contend that the only lawful marriage existing between Pierre Déjan and Josephine Schaeffer was that of September 11, 1858, as legalized by the notarial act of June 4, 1869, under the provisions of Act 210 of 1868, from which they argue that, under that statute, the community between the spouses dated and took effect from September, 1858, and not from February 18, 1869, as fraudulently alleged by the wife and as decided by the court in the decree rendered in her favor.

That theory is first antagonized by plaintiffs' pleadings, in which they allege that Déjan and his wife had been married on February 18, 1869, which averment was admitted by the defendant in her answer, thus judicially settling the status of the spouses and closing out all contestation or discussion thereon between the same parties.

Plaintiffs could not complain of being subjected to a rule of practice which, in another branch of the case, they invoke against their opponent, and which announces the doctrine as follows: " We understand

it to be a rule in the administration of justice that a man shall not be permitted to deny what he has solemnly acknowledged in a judicial proceeding, nor to shift his position at will to a contradictory one in relation to the subject matter of litigation, in order to prostrate and defeat the action of the law upon it." (4 Ann. 416).

But, as they urge, in argument, that they took the date of the marriage from the wife's petition in the suit for separation of property, by which they had been led into an error, we are disposed to give them the benefit of a doubt, and to release them from the rigor of the rule, preferring to rest our decision of the cause on other considerations.

Now, as their whole theory rests not only on an admission, but actually on the argument that Déjan and his wife were legally married when the judgment of separation of property was rendered, it is undeniable that there did exist a community of acquets and gains at the time that the suit was instituted. Hence, naturally flows the conclusion that the judgment was not a nullity, on the ground that it purported to dissolve a community, which had no legal existence, and, therefore, the community, which avowedly existed, must have been dissolved by the judgment, unless it turns out to be null and void on other grounds.

It is apparent, and it is not denied, that the court which rendered it had jurisdiction *ratione materiæ et personæ*, that citation had been issued and served, that issue had been joined by default, that a trial was had, proof administered and considered, and that after such hearing, judgment was rendered and signed in open court, that publication of the same was made and that execution was issued thereon.

Upon the face of the papers the judgment is valid. Can it be attacked collaterally? The law and jurisprudence answer that it may, but only by creditors and forced heirs whose rights would be affected thereby. And such an attack, even as restricted to creditors and forced heirs, is itself an exception to the general rule which shields the binding force and effect of judgments from collateral attacks.

As plaintiffs stand before the Court as collateral or simple heirs, it is elementary that they can urge no other claims and direct no other attack but those which the deceased could himself advocate in his own behalf if he were alive.

If, therefore, it were true, as contended by plaintiffs, that Mrs. Déjan did not and could not own, in her own right at the time of her union with the deceased, in 1858, the enormous sum of $28,000, for

which she obtained judgment in 1876, it is clear that, after solemnly acknowledging the fact in a notarial act in 1869, after having knowledge of the proof made thereof on the trial of the suit for separation of property, after quietly submitting to the execution of judgment predicated on that fact, and after acquiescing therein for ten years Déjan could not be allowed, in a collateral attack, to impair the full force of such a judgment. It is equally clear that his simple heirs at law, who claim under him, who can exercise no rights but those which are derived from him, have no better standing in Court for the same purpose and for the same line of attack, than he could himself command.

Whence could they derive a right to complain, being neither creditors nor forced heirs, even if it were apparent that the deceased tacitly or actively produced the result which they desire to avert? As to them, the judgment which they seek to avoid is protected from a collateral attack not only by reason and law, but by the authority of numerous adjudications of the Court, going back to the early history of our jurisprudence.

In the case of Kerwin vs. Insurance Co., 35 Ann. 33, this Court, in dealing with the pretentions of certain heirs who sought to claim, as belonging to the community, property which had been purchased in the name of the wife, with the assistance and authorization of the husband, denied the right of the husband or of his legatees or simple heirs to avoid the effect of such a contract, and it added:

"Only creditors and *forced heirs* are excepted from this rule, and the latter to the extent of their *légitime* only and for the purpose of protecting the same."

A similar claim was presented in the case of Brown vs. Stroud, 34 Ann. 374, in which the Court, guided by the same doctrine, used the following words: "The plaintiff claiming only as an object of his (the deceased) bounty, being neither creditor nor forced heir, has and could have, no better right that the testator possessed, and we clearly see that he had none."

The case of Compton vs. Maxwell, 33 Ann. 685, is directly in point, presenting a collateral attack by heirs on a judgment of separation of property between their ancestors. As in this case, the plaintiff there denied that the community between the spouses had been dissolved, and this Court said:

"We find in the transcript the entire record of a suit instituted in the name of Mrs. Compton against her husband, * * * in which judgment was rendered in her favor on a moneyed demand, and decreeing

a dissolution of the community. This judgment was rendered after citation to the husband, was duly published and followed by an execution on which there was a return of *nulla bona.* The separation of property purporting to be established by the judgment was subsequently and uniformly recognized by both parties thereto by many acts and proceedings. This recognition is shown by the purchase of property in the name of the wife, * * * in some of which pur-- chases the husband joined to authorize her." * * *

"Surely, all these facts must to the legal mind, outweigh the uncertain evidence afforded by the parol testimony of the mother of the plaintiffs and one of the plaintiffs themselves, contradictory of that derived from those acts and judicial proceedings, and by which such solemn acts and proceedings of the parties are sought to be overthrown. Under our settled jurisprudence, the effect of authentic acts and judicial proceedings cannot be so easily impaired, nor titles to real estate resulting therefrom, or evidenced thereby, so easily destroyed." * * *

"In the face of these acts and proceedings, it would hardly be contended that Thomas A. Compton, if alive, could be listened to in asserting a claim to this property. His heirs, claiming through him, stand in no better condition."

See, also, Drumm vs. Kleinman, 31 Ann. 124; Stewart vs. Mix, 30 Ann. 1036; Hebert vs. Lege, 29 Ann. 511; Barbet vs. Roth, 16 Ann. 271; Renford vs. Thorn, 15 Ann. 81; Henderson vs. Trousdale, 10 Ann. 548; Wolf vs. Lowry, 10 Ann. 272; Penn vs. Crockett, 7 Ann. 343; Darock vs. Darcey, 6 R. 342.

From our uniform jurisprudence the following rule may be culled. and must be considered as resting on most solid foundations:

Barring the exception in favor of creditors and forced heirs, touching judgments of separation of property between husbands and wives, the inquiry on collateral attacks against the validity of judgments "must be restricted to an examination to ascertain whether the court which rendered the judgment had jurisdiction, and whether it exercised that jurisdiction according to the forms of proceedings established by law. No inquiry can be made as to the correctness of the judgment upon the merits." Pasteur et al. vs. Lewis & Lynd, 39 Ann. 5.

Under the effect of principles so well settled in our jurisprudence, it becomes immaterial, for the purposes of this decision, to determine whether the marriage of February 18, 1869, was null or valid. It is conceded that there existed a legal marriage between the parties to-

the suit for separation of property; hence, there was a community which the wife was seeking to dissolve, and that community was dissolved by the judgment of April 24, 1876. Beyond this no inquiry can be made into the judgment, which is valid upon the face of the papers. The validity of the judgment cannot be impaired by the assertion, even if true, in point of fact, that the moneyed judgment in favor of the wife was in amount in excess of what it should have been.

We, therefore, conclude that all the property subsequently earned and purchased by Mrs. Déjan became, and remains to this day, her personal and separate estate, and that plaintiffs' claim must be rejected.

Having reached those conclusions, we find no warrant for a discussion of numerous other points made in the case and presented with marked ability and great learning by counsel, both in their oral argument and in their briefs.

Judgment affirmed.

Rehearing refused.