The motion was sustained, and the indictment quashed.

The district attorney took a bill of exceptions to the court's ruling.

The order of appeal was moved for and obtained in July, 1913. It was made returnable on the 30th day of August, 1913.

The transcript was only filed in this court on the 20th day of October, 1913.

Manifestly the transcript was not filed in time.

The appeal is therefore dismissed.

---

(63 South. 122.)

No. 19,660.

FARLEY et al. v. FROST-JOHNSON LUMBER CO. (JOHNSON & WEAVER, Warrantors.)

In re JOHNSON et al.

(April 28, 1913. Rehearing Denied May 26, 1913.)

*(Syllabus by Editorial Staff.)*

1. MARRIAGE (§ 50*)—SUFFICIENCY OF EVIDENCE.

While marriage may be proved by the acts of the parties in holding themselves out to the public as man and wife, and by reputation, such evidence is accepted only for want of better evidence, and was insufficient to show the marriage of plaintiffs' father and mother where the mother, although living, was not called as a witness, and it appeared that without protest from her the father had subsequently married another woman, especially where the marriage sought to be so established was between a freeman and a slave, which could not be lawfully contracted.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 79–89; Dec. Dig. § 50.*]

2. ESTOPPEL (§ 32*)—BY DEEDS—PERSONS TO WHOM AVAILABLE—"PRIVY."

A grantee from a woman described in a deed as the widow, and two children described as the only heirs of C., was not estopped by such deed to deny the alleged widow's marriage to C., as against two other children who did not join in the deed, since estoppel by deed is operative only between the parties thereto, and their privies, and coheirs and co-owners are not privy to each other's contracts, even if the subject of the contract be the common property; a "privy" to a deed meaning a party, legal representative of, or successor in title to, a party and one bound by the deed.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 81; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 6, pp. 5606–5611; vol. 8, p. 7764.]

3. ESTOPPEL (§ 29*)—BY DEEDS—PERSONS TO WHOM AVAILABLE.

While grantees of land cannot deny the title of those from whom they bought, this rule was not violated by grantees of a woman described in the deed as the widow, and two children described as the only legal heirs of C., who denied such alleged widow's marriage to C. in a subsequent petitory action by two other children, since in such an action plaintiff must recover upon the strength of his own title, and not on the weakness of his adversary's, and the grantees were therefore not denying the title of their grantor but simply ignoring it as having nothing to do with the case.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 69–73; Dec. Dig. § 29.*]

4. ESTOPPEL (§ 3*)—PLEADING.

The grantees of an alleged widow and two children of C., when subsequently sued for the land by two children of a subsequent marriage, alleged that they purchased from C.'s legal heirs and that the children then suing were not his legal heirs. In a subsequent suit by two children of the alleged widow, they defended on the ground that she was not married to C. and that plaintiffs, being illegitimate, were not C.'s heirs and had no title. *Held* that, while defendants' admissions in the first suit that plaintiffs' brothers were heirs of C. was evidence in plaintiffs' favor, it did not estop defendants to deny their legitimacy; the admissions having been made in a suit to which they were not parties, and plain-

tiffs not having acted thereon or been prejudiced thereby.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 2–5, 7; Dec. Dig. § 3.*]

The Chief Justice and Monroe, J., dissenting.

Certiorari to Court of Appeal, Parish of Natchitoches.

Action by Liddy Farley and another against the Frost-Johnson Lumber Company, who called their vendors in warranty, A. R. Johnson and another. Judgment for plaintiffs, and defendant and the warrantors apply for certiorari or writ of review. Judgments of the district court and Court of Appeal set aside, and suit dismissed.

Breazeale & Breazeale, of Natchitoches, for applicants. J. D. Rusca and Searborough & Carver, all of Natchitoches, for respondents.

PROVOSTY, J. The plaintiffs claim, as heirs of John N. S. Cox, the undivided half of the W. ½ of N. W. ½ of section 9, township 11 north, range 6, and the N. W. ¼ of section 2, township 11 north, range 7 west, parish of Natchitoches. The defendants claim title to the whole of the property by purchase from Johnson and Weaver, and call their said vendors in warranty. The latter purchased from Robert and John Cox and Julia Smith, the brothers and the mother of the plaintiffs, by an act reciting as follows:

"Know all men by these presents that we, Julia Smith, widow of John N. S. Cox, Robert Cox, and John Cox, the only legal heirs of John N. S. Cox, deceased, have this day sold," etc.

In setting forth their title the plaintiffs merely alleged in general that they had acquired by inheritance from their father, John N. S. Cox, who had acquired by patent from the government.

Defendants filed an exception calling upon them to give the name of their mother, with the date and registry of the marriage of their father and mother, and the dates of their own births.

They answered that their mother was Julia Smith, and that she was married to their father during the War, and that they themselves were born on March 27, 1870, and December 4, 1875, respectively.

On application of defendants, the plaintiffs were ordered to give more specific information than this; and they answered that they were unable to do so.

The question in the case is as to the legitimacy of the plaintiffs.

About the time of the breaking out of the Civil War, Julia Smith, a young mulattress and slave, who had had one or two children and worked as servant in the house of her father, a white man, left for Mexico, or Texas, with John N. S. Cox, a white man, who lived in the neighborhood; some said with the connivance of her father; some say not. The pair remained away some two years, during which time a letter was received written at Corpus Christi, Tex., saying that they had married. When they returned, their first born, John Cox, was a baby in arms. They gave themselves out to be man and wife. Cox went to the War. On his return he resumed his marital relations with Julia Smith living with her and holding her out to the world as his wife. These marital relations continued until August, 1884. During this time three other children were born to them, Robert Cox, who joined with John in making the sale to the warrantors of defendants, and the two plaintiffs, Liddy and Clara Cox. In 1884 John N. S. Cox married Mildred Barnes. This marriage was not preceded by a divorce from Julia Smith. Of this marriage two children were born. Johnson and Weaver, the warrantors, made the purchase from John and Robert Cox and Julia Smith in 1906. Shortly afterwards they transferred the property to the Black Lake Lumber Company, who

in turn transferred it to the present defendants. Johnson and Weaver had lived in the neighborhood and were acquainted with the foregoing facts, except, it seems, with the marriage to Mildred Barnes. In January, 1910, the two children of John N. S. Cox and Mildred Barnes, alleging themselves to be the legitimate children of John N. S. Cox, brought suit against the present defendants for this land. The defendants filed an answer in which they alleged that they owned the property from having bought it from the Black Lake Lumber Company, "who bought it from A. R. Johnson and J. R. Weaver, who bought it from the real heirs of J. N. S. Cox, plaintiffs not being such legal heirs;" and they called Johnson and Weaver in warranty. Weaver alone appeared. He first filed a motion asking that the plaintiffs be required to give the name of their mother, and the date of the marriage of their father and mother, as well as the dates of their own births, and to furnish a certified copy of the certificate of the marriage of their father and mother. Whether any action was ever taken on this motion does not appear. It was filed on February 23, 1910. On April 8, 1910, Weaver filed an answer in which he averred:

"Respondent admits that he and A. R. Johnson bought the land claimed by the plaintiffs from the heirs of J. N. S. Cox, and sold it to the Black Lake Lumber Company, who sold it to the Frost-Johnson Lumber Company. Respondent acted in good faith in the purchase of said land from said heirs, who represented themselves and were the legal heirs of J. N. S. Cox. Your respondent shows that the plaintiffs herein are not the legal heirs of J. N. S. Cox."

The suit was never tried. The parties made a compromise by which Weaver and Johnson paid $75 to the plaintiffs in it, and a judgment, based on this compromise, was entered decreeing the defendants in it, to be owners of the property.

The allegation made by Weaver in that suit to the effect that John and Robert Cox were the legal heirs of John N. S. Cox, and that Julia Smith was his widow, is now relied on by the plaintiffs in the present suit as an estoppel on the question of their legitimacy. The case is before this court on writ of review to the Court of Appeal, and therefore has not been argued orally. The brief of the plaintiffs hardly amounts to a claim that their father and mother were legally married. Their mother was a slave at the time of the alleged marriage, and therefore incapable of marriage with a free man. She was still living at the time of the trial, and, although old, was not so old but that her testimony might have been secured by commission, or even taken in open court. If a marriage really took place, she might have given the plaintiffs, her children, all the information necessary for procuring the official record evidence of it, or, at least for accounting for the absence of this certificate.

[1] No doubt, as is said in plaintiff's brief, marriage may be proved by the acts of the parties in holding themselves out to the public as man and wife and by reputation; but such evidence is accepted only for want of better, and in the present case the nonproduction of this better, evidence, which, for all that appears, the plaintiffs might have procured if really existing, militates strongly against plaintiffs; and the subsequent legal marriage of their father, with no protest, so far as the evidence shows, from their mother, who lived in the neighborhood, would seem to rebut all the inferences that might otherwise have resulted from the previous conduct of the parties. And besides neither reputation nor records can establish a legal marriage between a slave woman and a free man.

The bulk of the brief of the plaintiffs is devoted to the contention that the defendants are estopped from contesting their legitimacy.

This estoppel is sought to be founded on the deed by which Weaver and Johnson acquired from John and Robert Cox and Julia Smith, and, as already stated, on the allegation made by Weaver in his answer to the suit of the heirs of Mildred Barnes to the effect that John and Robert Cox were the legal heirs of John N. S. Cox and Julia Smith, his widow. It is said that this deed and this allegation are an admission that John and Robert Cox were legitimate, and that Julia Smith was married to John N. S. Cox; and that this admission carries with it an admission of the legitimacy of plaintiffs, since John and Robert Cox could not be legitimate, and Julia Smith could not have been married to John N. S. Cox, without the plaintiffs being legitimate. And it is argued that the defendants are concluded by these admissions because, as to the deed, "they cannot be heard to deny title in those from whom they bought"; and, as to the judicial allegation, "they cannot be allowed to deny what they have solemnly acknowledged in a judicial proceeding, nor to shift their position to a contradictory one in relation to the subject-matter of the litigation, in order to defeat the action of the law upon it."

[2] The estoppel sought to be founded upon the deed was sought to be met in the Court of Appeal by the proposition that:

"Estoppel by deed is operative only between the parties to the deed and their privies; strangers to the deed are not bound by it, nor can they invoke it." 16 Cyc. 710.

The Court of Appeal was of the opinion that the plaintiffs were privies to the said act of sale, for the reason that they "were co-heirs and co-owners with defendant's vendors, and bore the same relationship to and had the same interest in the estate of John N. S. Cox." But this was an error. Co-heirs or co-owners are not privies to each other's contracts, even if the subject of the contract be the common property. By a privy to a deed is meant a party to the deed

or a legal representative of, or successor in title to, a party, the heirs, executors, administrators, or assigns of a party, what the French call the ayant causes. If the plaintiffs had been privies to the said act of sale, they would have been bound by it and would be estopped from prosecuting the present suit. To be privy to an act means to be bound by it.

[3] As to the proposition that the defendants "cannot be heard to deny title in those from whom they bought," there can be no doubt of the correctness in the abstract of the principle it embodies; but that principle has no application to the present case. This is a petitory action in which the plaintiff must recover upon the strength of his own title, not on the weakness of that of his adversary, where, therefore, the defendant is not required to show any title at all, but may say to the plaintiff, "Possideo quia possideo" —I possess because I possess—show that you have a title to the property or else do not disturb me in my possession; until you do show a title, it is no concern of yours whether I have a title or not. So that the defendants in this case are not denying the title of John and Robert Cox and Julia Smith, but are simply ignoring it altogether, as having nothing to do with the case.

[4] The question of the judicial estoppel will require somewhat more elaborate treatment. There is no denying that logically the admission or allegation of John and Robert Cox having been the legal heirs of John N. S. Cox is an admission of the plaintiffs being likewise the heirs of John N. S. Cox, and there is no denying that in a number of cases this court has held that judicial admissions or allegations are binding and conclusive upon the parties who have made them, even in suits with other parties. But this court has in later cases taken a different view, without expressly overruling these prior cases. So that our jurisprudence upon

this point is not in a very satisfactory condition. With a view to reconciling these decisions as far as possible, we have gone over them. Many which are usually cited on this point are not really in point, and others may be readily distinguished.

In Bore v. Quierry, 4 Mart. (O. S.) 545, 6 Am. Dec. 713, after the plaintiff had brought suit for wages as a servant, and lost, she brought suit as a partner; and the question was whether the allegations of the first suit were admissible in evidence. Plaintiff contended that they were not, and cited 4 Bac. Abr. 107; 3 Id. 679; 1 Chitty, Pleas and Pl. 195; Har. Chan. Prac. 254; Peake's Ev. note. And cited the Partidas to the effect that a party may retract his confessions even in the suit itself where made, if erroneous. The defendant, on the other hand, contended that the judicial allegations were a complete bar. The court said:

"We do not indeed believe that the doctrine of estoppel, as known to our laws, extends to the length which the defendant contends for. In order that a demand may operate as a bar against another, it must appear that by the first all rights to the second have been waived. But, although it must be confessed that it is not easy to reconcile a demand of wages as a servant with a claim as a partner, the one does not of necessity exclude the other. Actions, contrary to one another, although they cannot be united in a libel, may be separately instituted 'quando sunt talia jura, quæ non tolluntur electione,' says Lopez, n. 1, Part. 3, 10, 7."

In Delacroix v. Prevost, 6 Mart. (O. S.) 280, often cited as a leading case, can hardly be said to be in point. The facts of it were that on an answer to an interrogatory on facts and articles the defendant admitted that he had agreed to pay interest at 8 per cent., and then contended that his said answer could not be made the basis of a judgment for more than legal interest because an agreement for conventional interest cannot be proved by parol evidence.

In Vavasseur v. Bayon, 11 Mart. (O. S.) 639, the defendant, without alleging error, sought to amend his answer so as to assume a position contradictory of that taken in the first answer. The court said:

"The court below certainly did not possess the right of depriving one party of the confession of another, which was on record, any more than it could have refused him the benefit of it in case it had been extrajudicial. If made through mistake, the proper time to have corrected the error would have been on the trial."

In Boatner v. Scott, 1 Rob. 546, the court said:

"An admission made in the course of judicial proceedings cannot be retracted to the prejudice of the adverse party. In this case there was no pretense of the allegation having been made in error; and it was in the same suit."

In Estill v. Holmes, 3 Rob. 134, the suit was on a note given as part of the purchase price of a tract of land. In a first answer defendant averred that he had sold the land to one Clarke with right of redemption at $20 per acre, and that Estill, the plaintiff, had purchased the land from Clarke, subject to this right of redemption, and had sold it to him (defendant), and by imposing upon him had made the price $50 an acre and taken the notes sued on for same; but that the land belonged to the government, and had been sold by the government to another person who had taken possession of it, so that the consideration of the notes had failed. In a second answer defendant averred that the notes had been given for the purchase price of the land, and that the consideration had failed because the title was bad. He left out of the second answer the averment of his having himself sold the land to plaintiff's author in title. Held, that the first answer was an admission that at the time he made the purchase and gave the notes he knew of the danger of eviction, and that, therefore, under article 2481, C. C., he was bound for the price notwithstanding the eviction. The case has in reality no bearing upon our point, since there was in it no disputed facts, but the court happened to say in it that the defendant could not "be permitted to gainsay

the allegations of his first answer," and hence the case is often cited as an instance of judicial estoppel.

In Wells v. Compton, 3 Rob. 171, the syllabus reads:

"Where the meaning of an instrument is uncertain, the record of another suit, by a different plaintiff, but to which the defendant was a party, will be admissible in evidence to show, by the acts and declarations of the latter, what his understanding of the instrument was. The present plaintiffs, not having been parties to the suit, cannot avail themselves of the statements in the pleadings as judicial admissions, absolutely conclusive of the rights of the defendant. They must be considered simply as other declarations."

In Hill v. Barlow, 6 Rob. 142, held that, where the petition alleges that an act of mortgage was intended by both mortgagor and mortgagee to procure to the latter an unjust preference, plaintiff will be estopped from contending, for the purpose of saving the suit from prescription, that the mortgage was not accepted until some time after it had been given. The allegation was in the same suit, and of course between the same parties; and it was not pretended that it had been made through error.

In Farrar et al. v. Stacy, 2 La. Ann. 210, a judgment was rendered against one Spencer. He appealed, but only devolutively, and execution issued, and certain slaves of his were seized and sold and were bought by Stacy. On appeal the judgment was annulled and the suit dismissed. Spencer then brought suit against Stacy asking that the sheriff's sale be annulled, and the slaves restored to him. His lawyers in this suit had purchased one of the slaves from him pending the seizure, and, at the same time that they brought suit for him to recover the slaves, they brought a suit of their own to recover their own slave. Inadvertently, or otherwise, they included their own slave among those they claimed for their client. The court, without reasoning out the matter or citing authorities, said that the two suits were inconsist-

ent, and dismissed that of the lawyers. No doubt the suits could not both be maintained, and, doubtless, the duty of the lawyers to their client would not allow of their prosecuting a suit of their own incompatible with that of their client. The case is, in those respects, so peculiar that it can hardly be said to be a precedent for holding that a mere bare judicial allegation made in one suit operates as an estoppel in another, especially when this other suit is with a stranger who has in no way been prejudiced by the allegation in question.

In Freeman v. Savage, 2 La. Ann. 269, Savage bought certain slaves from Freeman and gave his note, with two indorsers, for the price; and the suit was upon this note against the indorsers. In the meantime, however, Savage had made a simulated retransfer of the slaves to Freeman for the purpose of screening them from the pursuit of his creditors and one of the creditors, disregarding this retransfer, had seized the slaves; and Freeman had enjoined the seizure, claiming the slaves to be his, by virtue of the retransfer, and, as we understand, had done so unsuccessfully. The indorsers pleaded that the note had been paid by the retransfer; and Freeman sought to show the fictitious character of the retransfer. The court held that he was concluded by the act of retransfer and by the sworn allegations of his petition for injunction, observing briefly:

"What he has thus said and done, the policy of the law will not allow him to gainsay or deny."

The indorsers had not been parties to the suit in which the allegations in question had been made; hence no equity had arisen in their favor from these allegations. The case is authority, therefore, for the proposition that judicial allegations, apart from all equitable consideration, are conclusive in another suit with another party. The case as

a precedent may be said to be counter to Chaffe & Bros. v. Morgan, 30 La. Ann. 1307, infra. It is not supported by any citation of authority.

In Putnam, Administrator, v. Davidson, 3 La. Ann. 266, Putnam, Administrator, sued Davidson in the probate court to annul a succession sale at which Davidson had bought a slave. At the time this suit was brought, Davidson had already sold the slave; but he did not inform the court of that fact, but defended the suit as if he still owned the slave, and, by way of answer, claimed that, in case of eviction, he was entitled to warranty against the succession. The probate court annulled the sale, but was without jurisdiction to order the return of the slave; and a suit in a competent court was brought for the latter purpose. Davidson then pleaded that he was no longer the owner of the slave, having sold it some time prior to the first suit. Held, his attitude and allegations in the first suit estopped him from now setting up that fact. Said the court:

"We think that, as to the present plaintiff, he is bound by his plea, and must be held to it, on principles elementary in the administration of justice. * * * He ought to have disclaimed ownership, and thus enabled the proper parties in interest to be made parties to the suit."

It will be noted that it is "as against the present plaintiff" that the former allegation is held conclusive. Indeed, the second suit was but a continuation, or fruition, of the first, so that the case is not authority on the point we are concerned with. There was ground, besides, for equitable estoppel.

In Gridley v. Conner, 4 La. Ann. 416, certain slaves were seized, and one Barrow filed first an injunction, and then, after the injunction had been dissolved, a third opposition. In the injunction suit he claimed the ownership of the slaves; in the third opposition he sought to enforce a mortgage upon them, which he had bought pending his injunction. The judges stood two and two, the court being then composed of four judges; and, by operation of law, the judgment appealed from remained undisturbed. The judges voting for affirmance were of the opinion that, as a man cannot have a mortgage upon property of which he is owner, Barrow had destroyed his mortgage by continuing to assert ownership judicially after he had acquired the mortgage. No harm had come to the defendant in injunction by Barrow's assertion of ownership, therefore no element of equitable estoppel was involved and the doctrine of the case is that the mere fact that Barrow claimed ownership judicially operated as an estoppel. In other words, that a bare judicial allegation, disconnected from any element of equitable estoppel, operates as a conclusive estoppel. The court said:

"We understand it is to be a rule in the administration of justice that a man shall not be permitted to deny what he has solemnly acknowledged in a judicial proceeding, nor to shift his position at will to a contradictory one, in relation to the subject-matter of litigation, in order to prostrate and defeat the action of the law upon it."

In support of this, the court cited the following authorities: Sprigg v. Bank of Mount Pleasant, 10 Pet. 257, 9 L. Ed. 416; Jackson v. Stevens, 16 Johns. (N. Y.) 110; Jackson v. Morse, 16 Johns. (N. Y.) 201, 8 Am. Dec. 306; Welland Canal v. Hathaway, 8 Wend. (N. Y.) 480, 24 Am. Dec. 51; and Freeman v. Savage. These cases, except Freeman v. Savage, as an examination of them will show, are authority only on the general doctrine of estoppel, for in all of them an element of equitable estoppel was present. Indeed, Sprigg v. Mount Pleasant was not even a case involving judicial allegations. It was a suit upon a bond under seal which recited that the signers bound themselves severally as well as jointly; and the question was whether the defendant, one of the signers, was not estopped by the said recital from contending that he had bound himself only as a surety, and as such been discharged by the

giving of time to the principal obligor. In other words, it was simply a case of parol evidence not being admitted to vary or contradict a written contract. This case of Gridley v. Conner has not been followed as a precedent. See Wilson v. Curtis, 13 La. Ann. 601; Bowman v. McKleroy, 14 La. Ann. 587; Judice v. Kerr, 8 La. Ann. 462; Godwin v. Neustadtl, 47 La. Ann. 850, 17 South. 471; Chaffe & Bro. v. Morgan, 30 La. Ann. 1307. In this last case the court said:

"A party who in one suit set up a title of ownership to certain property is not thereby estopped from afterwards claiming mortgage rights on the property, as against one who in the former suit denied and contested his title as owner, and who was in no way injured or induced to change his position by the claim of ownership set up in the former suit."

In an earlier case (Millaudon v. Allard, 2 La. 551) this court had held that:

"The purchase of the land cannot have the effect of destroying the claim of the creditor unless the title passes to him."

This (Gridley v. Conner) suit was, however, between the same parties as that in which the allegation invoked as estoppel was made, and involved the same property, so that the case cannot be said to be authority for the proposition of allegations being conclusive in another suit with other parties.

In Denton v. Erwin, 5 La. Ann. 18, Erwin was the secret owner of a judgment against Denton. In order to conceal his ownership of this judgment from Denton, he had acquired it in the name of one Vason. He caused execution to issue on it, and, strange to say, advised and induced Denton to enjoin the execution, and went surety on the injunction bond. The grounds of the injunction were certain facts, related in the petition for injunction, as the result of which it was claimed that the judgment had been extinguished. The defense was that Denton was precluded from inquiring into the facts thus alleged because he had engaged in certain frauds in the same connection. This defense was maintained, and the injunction was dissolved, with damages, as we understand; and the seized property went to sale and was bought ostensibly by Vason but in reality by Erwin. Denton, having discovered Erwin's secret ownership, renewed his suit to annul the judgment, and asked at the same time the annulment of the sale. He alleged the same facts as in the petition for injunction, adding the fact of Erwin's ownership and of his having been the instigator of the injunction suit; Erwin pleaded the judgment in the injunction suit as res judicata. The court held: First, that the surety on an injunction bond, in a suit enjoining a money judgment, is a coplaintiff in the suit; and, secondly, that Erwin, having thus, as a party plaintiff in the injunction suit, alleged the facts set forth in the petition for injunction, was estopped from denying them. The court said:

"A party may, by his own voluntary act, have placed himself in a situation as to some matter of fact that he is precluded from denying it; and the rule by which he is so held to be bound is founded on the obligation which every man is under, to speak and act according to the truth of the case and in the policy of the law to prevent the unavoidable mischief resulting from uncertainty, confusion, falsehood, and the want of confidence in the intercourse of men, if they were permitted to deny that which they have deliberately and solemnly asserted and received as true. Greenleaf on Evidence, § 22. We accordingly held that a man should not be permitted to deny what he had solemnly acknowledged in a judicial proceeding, nor to shift his position at will, to a contradictory one, in relation to the subject-matter of litigation, in order to frustrate and defeat the action of the law upon it. Gridley v. Conner, 4 La. Ann. 416. The judges in that case were divided in opinion, but they were united in opinion in the principle of law therein laid down, and their dissent only related to its application to the facts of the case. See the cases there cited, and 4 Kent's Com. 261 (last edition) note by the author; Pelletreau v. Jackson, 11 Wend. (N. Y.) 117; Jackson v. Waldon, 13 Wend. (N. Y.) 208. * * * These authorities concur in showing that the matters alleged for relief against those judgments in the first suit, under the oath of Denton, whose coplaintiff and surety Erwin was, cannot be unheeded by this court, but, left to their legal

effect, they deprive him of the faculty of now treating them as false by again attempting to make the amount of his judgments out of the property of the plaintiff; indeed, any other conclusion would encourage and sustain a scandal in the administration of justice. The only means under our legislation, within the power of courts to protect the integrity of their judicial proceedings, are the sanctity which is thrown around them, and the presumptions which the law has established in their favor. If all the restraints of justice and truth are lost sight of by litigants, and judicial proceedings are converted into mere machinations for fraud and oppression, the law itself meets the emergency by holding the offending parties to their allegations of record, and not permitting them to falsify what they have solemnly declared to be the truth."

It will be noted that the court here rests its decision, not upon any equities as between parties, nor upon any proof resulting from the evidence, but, as expressed in the syllabus, upon the announced principle that:

"Courts of justice are bound to vindicate and maintain the sanctity of their judicial proceedings before they consider the merits of cases."

The authorities cited by the court in support of that proposition do not support it, excepting always Freeman v. Savage, and Gridley v. Conner, supra. They are Greenleaf on Ev. 22; Gridley v. Conner, 4 La. Ann. 416, supra; Freeman v. Savage, 2 La. Ann. 269, supra; 4 Kent's Com. 261, note; Pelletreau v. Jackson, 11 Wend. (N. Y.) 117; Jackson v. Waldron, 13 Wend. (N. Y.) 208; Freeman v. Walker, 6 Greenl. (Me.) 68. The case here last cited is referred to by Prof. Wigmore, par. 1055, p. 1228, as an instance of the mingling of two principles: (1) That of the conclusiveness, vel non, of judicial admissions; and (2) that of not allowing a witness to testify to his own prior falsity— which latter, says the learned author, "is now wholly repudiated." The allegation invoked in that case as an estoppel had not been made in court but in a sworn application to the federal authorities for the release of a ship, and the point of the conclusiveness vel non of the allegation was not decided,

133 La.—17

"dubitatur," said the court. The case, therefore, is not authority on our point. As for the passage cited from Greenleaf, it has reference to estoppel in general, and not to judicial estoppel in particular. Kent, ubi, cit., is discussing "contingent remainders"; and the note in question is a mere reference to Hamilton v. Elliot, 4 N. H. 182, 17 Am. Dec. 408, which was a case, as we understand it, founded upon principles peculiar to the common law of real estate. Jackson v. Waldron, 13 Wend. (N. Y.) 208, is the same case as Pelletreau v. Waldron, 11 Wend. (N. Y.) 117. The latter is the title of the case in the Supreme Court, and the former its title in the Court of Correction of Errors; Pelletreau having died and been succeeded by Jackson, the administrator of his estate, as plaintiff in the case. It was a case of estoppel by deed, and hence is not authority for the conclusiveness of judicial admissions. We hope we may be pardoned for reproducing here the following bit of eloquence from Senator Tracy's opinion, at page 205 of the report, which, though having reference to estoppel by deed, may just as well be applied to estoppel by pleading:

"I shall not deny, nor do I doubt, that this doctrine, in its virgin purity and simplicity, before it was bedizened and obscured with the meretricious and many colored drapery in which lawyers and judges have dressed it, was consistent with truth and justice and good sense; but legal ingenuity has spun and wove for it so many and various garments that it is now difficult, if not impracticable, to ascertain its primitive form and features."

The doctrine of this Denton v. Erwin Case is broad enough, as announced in the syllabus, to apply to suits with other parties, and even where such suits, are in connection with different property; but the case itself, in its facts, is not a precedent for this latitudinous operation of the doctrine; the litigation having been between the same parties and in connection with the same property.

In Webster v. Smith, 6 La. Ann. 719, the

defendant Smith made a donation of certain slaves to the mother of a minor; and, the donee, having died, filed a petition alleging that the decedent had left property and a minor child, and asking that an inventory be made, and that one Taylor, an uncle of the minor, be appointed tutor, and he under-tutor. This inventory was made, and he (Smith) approved and signed it as under-tutor. It included the slaves that had been donated. Later, the minor having died, Smith applied for the curatorship of his estate and asked that an inventory be made. He was appointed curator and the inventory was made. It included the slaves; and he, as curator, signed it; but he added to it a memorandum to the effect that he claimed to be owner of the slaves by virtue of the act by which he had donated them to the mother of the minor. As curator he obtained and took possession of the slaves. Being sued for them by the legal heirs of the minor, he set up his claim of ownership. The court said:

"The probate proceedings carried on by the defendant amount to judicial confession on his part that the property belonged to the minor. Code, 2264, 2266, 2270 (Revised Code, 2285, 2286, 2291). Even if we supposed, which we do not, that he was in error of law, as to the effect of his deed of gift he could not revoke his judicial confession, and it affords the legal presumption that the slaves belonged to the minor. Article 2264 (2285)."

The court here abandoned the common-law formulation of the law of estoppel and brought into play these articles of the Code on the same subject. The case is authority for not confining the conclusiveness of the "judicial confession" to the case in which it has been made, but for extending it to all cases where the fact it bears upon may be at issue between the same parties. We may add that the case presented an element of equitable estoppel, for, after having obtained possession of the slaves in his capacity of curator (i. e., as agent, of the minor's es-

tate), Smith could not, by any act of his own, change the nature of his tenure, and hence he was holding them as property belonging to the plaintiffs in the case who were the legal heirs of the minor. The court, however, predicated its judgment, not upon equitable estoppel, but upon the conclusiveness of judicial allegations, it said:

"He could not revoke his judicial confession."

The general statement that the minor had property was not a specific allegation that these particular slaves belonged to the minor, and, by approving and signing the inventory, Smith had "led no one astray and occasioned damages to nobody" (Stockmeyer v. Oertling, 38 La. Ann. 100); therefore the ground of the conclusiveness of the judicial allegations in question is simply the bare fact of their having been made. The doctrine of the case is therefore much broader than its facts, and rests upon the sanctity of judicial allegations, or, in other words, upon the necessity for the courts to vindicate the sanctity of their proceedings. In its facts the case involved a litigation between the same parties, or, which is the same thing, between the party who had made the allegations and the heirs of the other party, and therefore is not a precedent for holding that judicial allegations are conclusive in a suit with other parties.

In Jones v. Morgan, 6 La. Ann. 631, and Osborn v. Segras, 29 La. Ann. 291, a judge was held to be estopped from invoking the nullity of a judgment which he himself had rendered. We note these two cases merely because they are often cited as instances of judicial estoppel. They are such, but upon other principles, and are not in point.

In Mallard v. Carpenter, 6 La. Ann. 397, the syllabus reads:

"Where an error of fact as to the domicile of a party has been alleged in the pleadings, it may be revoked, even in a suit between the same parties, and can have but little weight in

a controversy in which a third person is a party.  C. C. 2270."

In Lejeune v. Barrow, 11 La. Ann. 501, it is said that a party to a family meeting is estopped to deny the declarations made by the family meeting. The facts of the case are not fully stated, however, and, for all that appears, there may have been ground for equitable estoppel. The case can therefore hardly be said to be in point.

In Edson v. Freret Bros., 11 La. Ann. 710, several creditors of Donshea brought separate suits against him and attached property, alleging it to belong to him. Freret Bros. were the first to attach, and they were appointed keepers of the property. They sold it at private sale. Donshea having died, Edson was appointed curator of his estate, and brought suit against Freret Bros. for the property. Freret Bros. pleaded that previous to the attachment Donshea had sold the property to another, and that this other had authorized them to sell the property at private sale. This averment of the property having been sold by Donshea to another previous to the attachment was considered by the court to be inconsistent with the allegation made in the attachment suit that the property belonged to Donshea; and the case was disposed of in these brief words:

"He is not to be heard who alleges things contradictory to each other."

It will be noted that the decision is not predicated upon the fact that Freret Bros. had disposed of the property without authorization from the other attaching creditors and of Donshea, but squarely upon the conclusive character of the allegation made in the attachment suit. In other words, that Freret Bros. could not be heard to prove that this allegation had been made in error of fact. The case would seem to be contrary to article 2291, C. C., which expressly allows a party to retract, even in the suit itself, his allegations of fact erroneously made.

Reed v. Crocker, Extr., 12 La. Ann. 445, is authority only for the proposition that judicial admissions made in another suit are admissible in evidence.

In Pochelu v. Kemper, 14 La. Ann. 308, it was held that the plaintiff, who had alleged a company to be a corporation, and obtained judgment against it as such, could not, on the same cause of action, sue it as a partnership. A clear case for equitable estoppel, and therefore not in point.

In Smith v. Harrell, 16 La. Ann. 190, the court held that allegations of a previous suit which terminated in a nonsuit did not estop, since the "judgment of (nonsuit) which left the parties in the same relative positions in which they were before the suit was instituted."

In Devall v. Succession of Watterston, 18 La. Ann. 136, the plaintiff, who had rendered services as manager of the sawmill of the decedent, brought suit for wages, and, losing his suit, brought a second suit for a settlement of partnership, alleging that he was a partner. His allegations in the first suit were held to estop him in the second suit. The court said:

"It was held in Gridley v. Conner, 4 La. Ann. 416, that a party will not be permitted to deny what he has solemnly acknowledged in a judicial proceeding; and in Denton v. Erwin, 5 La. Ann. 18, the court said in addition to this: That a party cannot shift his position at will to a contradictory one in relation to the subject-matter of litigation in order to frustrate and defeat the action of the law upon it. The alleged cause of action in the two suits is not an identical one; but the judicial admission made by the plaintiff in the first suit, that the contract sued on was one of hire, estops the plaintiff from proving that that contract was one of an entirely different nature. It is the presumptio juris et de jure, against which the law admits no proof whatsoever."

In behalf of plaintiff it was strongly argued, but in vain, that a party is not estopped by a mistaken interpretation of his contract; or, in other words, as subsequently held by this court, that a party is not estopped by a plea unsuccessfully made in a

previous suit. Godwin v. Neustadtl, 47 La. Ann. 850, 17 South. 471, and other cases cited, supra. The suit was between the same parties, however, and in connection with the same subject-matter; hence the case is not authority for the conclusiveness of judicial allegations when invoked in other suits by other parties.

In City v. Hall, 21 La. Ann. 438, all that was held was that a party waives citation by voluntary appearance; or, in the words of the decision, that "he cannot thus make an appearance and at the same time urge want of citation." Case evidently not in point.

In Abbot v. Wilbur, 22 La. Ann. 368, Wilbur sued Abbot, and Abbot defeated the suit by pleading a former judgment on the same cause of action as lis pendens. Abbot brought suit to annul this judgment on the ground that it had been rendered without citation. Held that, having pleaded said judgment as lis pendens, he was estopped from contending that he had not been cited in the suit in which it was rendered. The court said:

"Estoppels are not favored in law, for the object of the administration of justice is to discover and apply the truth; but there may be cases in which courts are bound to say to a litigant that he has, to his own advantage or the injury of his adversary, asserted judicially what is false, and that, having done so, he must be forever forbidden to unfold for his own benefit the truth of the matter. * * * These views of the plaintiff were sustained by the Supreme Court of the United States, which decided that the company was estopped, by its own conduct in the county court, from proving the reverse of what it had there maintained; and the principle was enunciated that where a party asserts what he knows to be false, or does not know to be true, to another's loss, or to his own gain, he is guilty of a fraud—a fraud, in fact if he knew it to be false; a fraud in law if he does not know it to be true. That it would not mitigate the fraud if the false assertion were made in a court of justice and a suit defeated thereby; and that the defendant could not be heard to say that what was asserted on the former trial was false, even if the assertion was made by mistake. 'If it was a mistake, of which there is no evidence, it was one made by the defendants, of which they took the benefit, and the plaintiff the loss, and it is too late to correct it now.'"

This case presents simply an ordinary estoppel where a party has made an allegation "to his own advantage and the injury of his adversary," where he "has taken the benefit and his adversary the loss." The case is not in point, since what is there said arguendo must be read in the connection in which it is said, and, when so read, is not in point, but has reference only to cases involving elements of equitable estoppel, as in the cited case of Philadelphia v. Howard, 13 How. 335, 14 L. Ed. 157.

In Morgan, Administrator, v. Kinnard, 23 La. Ann. 645, Norrell, for whose succession Morgan was administrator, was sued on one of the notes given by him as part of the price of a plantation. He pleaded that the consideration of the note had failed because the title given him was bad, as the plantation had been previously sold to one Kelly. What was the result of that suit does not appear. From the expression of the court, however, "Suppose that judgment had been rendered against Norrell * * * in spite of his defense," the inference would be that Norrell was successful in it. Both Norrell and Kelly having died, the plantation was taken possession of by Kelly's administrator, and sold at Kelly's succession sale, and was bought by Kinnard et al. The administrator of Norrell then brought a petitory action against Kinnard et al. The latter pleaded Kelly's title, and Norrell's administrator replied that Kelly's title was a simulation. Kinnard et al. retorted that the allegation made by Norrell in the suit on the note, as to the invalidity of his own title and the validity of that of Kelly, estopped Norrell and his administrator from denying the validity of Kelly's title. The court said:

"It is contended that Norrell is estopped from setting up title to this land, because when sued on one of the notes given for the price thereof he alleged that the consideration of the note had failed, inasmuch as he had not received a perfect title; that the land had been previously transferred to J. W. Kelly. The same wit-

nesses who prove the above facts state that Norrell, during the pendency of the suit, proposed to compromise the note in suit by paying $2,000. It is a general rule that parties are bound by their judicial admissions, and it is also true that admissions made in one suit may sometimes be used in another suit, even though the parties to the suit be not the same. But we are not prepared to say that all admissions made in pleading may be used as an estoppel in every suit in which the party making them may be a party. This suit is itself an example of the harshness and injustice of the rule contended for. Suppose that judgment had been rendered against Norrell on the note, in spite of his defense, he would have the price to pay, and yet any stranger who might get possession of his land could hold it without a legal title, because Norrell had admitted in the contest for the price that he had no title. Doctrines which lead to such unjust conclusions cannot be correct."

In Bender v. Belknap, 23 La. Ann. 764, Belknap, claiming to be owner of a contract which one Ainsley had taken upon himself to enter into for Bender with one Dryfus for the sale and delivery of 50 bales of cotton, obtained delivery of 38 bales of the cotton (the report does not say from whom) and brought suit against Bender for the other 19 bales. Bender defeated the suit and then brought suit against Belknap for the return of the 38 bales. Belknap pleaded that he had not acted for himself in the transaction but as agent for one Gordon. Held, his allegation of ownership made in the former suit estopped him from taking that position. The court predicated the decision, not upon the proposition that Belknap could not be allowed to evade the responsibility resulting from his having received the 38 bales for himself as owner by pleading that he had received them as agent for some one else, but upon the supposed conclusiveness of judicial averments. It said:

"It is a well-settled rule in the administration of justice that a party will not be permitted to deny what he has solemnly acknowledged in a judicial proceeding. The defendant will not be heard to contradict his sworn statement that he received the property in controversy as owner. The only means of courts to protect the integrity of judicial proceedings are the sanctity which the law throws around them, and, if all the restraints of justice and truth are lost sight of by litigants, 'the law itself meets the emergency by holding the parties to their allegations of record, and not permitting them to falsify what they have solemnly declared to be the truth.' Denton v. Erwin, 5 La. Ann. 18; Gridley v. Conner, 4 La. Ann. 416; Freeman v. Savage, 2 La. Ann. 269."

Here the doctrine of estoppel based, not upon the equities or rights of the parties, but upon the necessity for the courts to maintain their own dignity, is again sanctioned. The suit, however, was between the same parties; and hence the case, in its facts, is not a precedent for allowing judicial allegations to be invoked as estoppels in other suits with other parties.

In Bush v. Dewing, 24 La. Ann. 272, there was a sequestration, and Dewing appeared for the purpose of bonding it, and alleged that the suit was "pending" against him. Held, that this allegation estopped him from afterwards contending that he had not been cited. Here the allegation of the pendency of the suit had been made in the suit itself in which it was claimed that there had been no citation. The case is, therefore, not in point.

In Ware v. Morris, 23 La. Ann. 665, the defendant Morris had made a redemption sale to the plaintiff, Ware, and retained a counter letter showing it to have been a mere contract of security. Thereafter Morris went into bankruptcy, and failed to put the property on his schedule. Ware sued for possession of the property, and Morris was held not to be estopped by his having failed to put it on his schedule from showing the true nature of the redemption sale.

In Mrs. Elbert v. Wallace and Liddell, Sheriff, and others, 26 La. Ann. 705, Mrs. Elbert and Z. Hanna sold four lots to one Henderson by authentic act. In this act they styled themselves "members of the firm of Z. Hanna & Co." Also in several suits against divers persons by Z. Hanna and Mrs. Elbert this firm was said to be composed

of Z. Hanna and Mrs. Elbert. Henderson, to whom Z. Hanna and Mrs. Elbert had sold the four lots, gave a mortgage on them to secure a note of the firm of Z. Hanna & Co. Executory process issued on this mortgage, and Mrs. Elbert sued out an injunction, claiming that she, and not Henderson, was the owner of the lots at the time the mortgage was given; and she offered herself as a witness to prove that she had never been a member of the firm of Z. Hanna & Co. Held, that she, as a witness, could not be heard to contradict her declaration in the authentic act and her allegations in the several suits; and that the lawyer who had brought the suits in question could not be heard to testify that he had not been authorized to make the allegation of her being a member of the firm of Z. Hanna & Co. Of the two estoppels here enforced, that by deed is founded upon clear principles of equity; the judicial estoppel would seem to have nothing to support it, except the supposed sacredness of judicial allegations.

In Soulie v. Ranson, 29 La. Ann. 161, plaintiff and defendant made a contract by which plaintiff was to cause the plantation of defendant to be seized and sold in satisfaction of a mortgage he held upon it, and was to buy it in at the sale and allow defendant to continue in possession and cultivate it; the proceeds of the crops to be attributed to the payment of the debt, and the place to be restored to defendant when the debt should have been paid. By a subsequent contract plaintiff agreed to make advances to defendant to enable him to restock the place with working animals and implements and reditch it and generally put it in condition for cultivation, and to cultivate it. Defendant removed these immovables by destination from the place, claiming them as his own, and plaintiff brought suit to recover them. In a first answer defendant admitted that plaintiff was the owner of the plantation.

In a second answer, filed on the same day, he put another interpretation on the contract and denied that plaintiff was owner of the plantation. Held, the denial in the second answer estopped by the admission in the first. The court said:

"It is not permissible to deny what one has solemnly acknowledged in a judicial proceeding. The admissions are made stronger by being transmitted into averments which he cannot be permitted to gainsay."

It is noted that the two answers merely put different interpretations upon the written contract; and that the second was practically a withdrawal of the first. The case is authority for the conclusiveness of judicial allegations, even in the absence of all element of equitable estoppel. The allegations, however, had been made in the suit itself, and not in another suit with some other party.

In Judson Fowler & Stillman v. Stevens, 29 La. Ann. 353, Stevens had caused himself to be appointed liquidator of the firm of Lyons & Co. on the allegation that he was a partner; he had, as liquidator, taken possession of the assets of the firm and filed an account of his administration. Thereafter he was sued as a partner by a creditor of the firm; and he sought to deny his having been a partner; and he was held estopped. The case presented a clear element of equitable estoppel, since he had, on his representation of being a partner, taken possession of the assets of the firm; but the court did not rest its decision upon that consideration, but broadly upon the following:

"These judicial admissions unalterably determine his liability in the capacity in which he is sued by the plaintiffs. His evidence to the contrary cannot now be heard. He cannot be permitted to impugn what he had solemnly and repeatedly asseverated in judicial proceedings to be true."

The case in its doctrine is a precedent for holding judicial allegations to be conclusive in other suits with other parties; but in its

facts it is not, since the suing creditor had been a party in interest in the liquidation proceedings.

In Succession of Anselm, 30 La. Ann. 1145, a judicial allegation of fact made in the suit itself was sought to be retracted without alleging error. The case is therefore not in point.

In Chaffe & Bro. v. Morgan, 30 La. Ann. 1307, the syllabus reads:

"A party who in one suit sets up a title of ownership to certain property is not thereby estopped from afterward claiming mortgage rights on the property, as against one who in the former suit denied, and contested his title as owner, and who was in no way injured or induced to change his position by the claim of ownership set up in the former suit."

The court said:

"In Abbot v. Wilbur, 22 La. Ann. 368, it was correctly announced that estoppels are not barred [favored] in the law, for the object of the administration of justice is to discover and apply the truth, and it is only where one has asserted in some judicial or other proceeding what is false, to his own advantage or the injury of another, that he will be estopped from showing the truth. The same principle is recognized by all the elementary writers. See Phillips on Evidence, vol. 1, § 378; Greenleaf's Evidence, vol. 1, § 204, and note; Biglow on Estoppel, p. 293, Nos. 4 and 5. It is manifest that Shultz was in no way injured or induced to change his position for the sum by Chaffe's assertion of title. It is, however, well settled that estoppels cannot be set up against law."

This was said in a case between the same parties and with reference to the same property.

In Factors' & Traders' Ins. Co. v. De Blanc, 31 La. Ann. 100, De Blanc had intervened by way of third opposition in a seizure and sale proceeding and claimed that the proceeds of the sale should be paid to him by reason of the fact that the mortgage which was being foreclosed by the seizure and sale had been paid, and that he held a mortgage on the property. After this first opposition had been put at issue, he discontinued it. This he did, as we understand, before the sale, for the reason, no doubt, of his having discovered the inconsistency of denying the legality of a sale of which he was claiming the proceeds. After the sale had taken place, he took out executory process on his own mortgage, and was enjoined by the Factors' & Traders' Insurance Company, who had bought the property at the sale. Against this injunction De Blanc pleaded the same grounds of nullity that he had pleaded in his third opposition, namely, that the mortgage under which the sale was made had been paid. The court held that his third opposition, whereby he had claimed judicially the proceeds of the sale, estopped him from ever contesting the validity of the mortgage for the payment of which the sale was made. The court said:

"One cannot claim, judicially, the proceeds of a judicial sale, and afterwards attack that sale for nullity. The demand for the proceeds is the judicial admission of the legality of the sale (Boubede v. Aymes, 29 La. Ann. 275); and the declaration which one makes in a judicial proceeding is full proof against him; and it cannot be revoked unless it be proved to have been made through an error of fact. R. C. C. 2291. Nor can one who has judicially asserted a fact, as the basis of a right touching the subject-matter in controversy, be permitted to change his position and to assert the contrary. Gridley v. Conner, 4 La. Ann. 416; Denton v. Erwin, 5 La. Ann. 18; Bender v. Belknap, 23 La. Ann. 765; Gervin v. Beaird, 26 La. Ann. 630."

It will be noted that the doctrine of this case is not that one cannot at the same time claim the proceeds of a sale and its nullity, but that it is that one who has filed and withdrawn before trial a third opposition claiming proceeds of a sale is forever estopped from contesting its validity. Here was no element of equitable estoppel. In that respect the case is distinguishable from Campbell v. Woolfolk, 37 La. Ann. 320, where the third opposition had been discontinued only after the sale had taken place, so that the purchaser at the sale may well have relied upon the claim made of the proceeds of the sale as an affirmance of its validity. The

case in its doctrine is a precedent for holding judicial allegations to be conclusive in another suit between other parties; but not in its facts, since the purchaser at the sale held under and by virtue of the proceedings in the suit in which the allegations were made.

Byrne v. Hibernia Bank, 31 La. Ann. 81, is authority for the proposition that in the suit in which they have been made judicial allegations are conclusive and cannot be withdrawn unless made through error.

In Board of School Directors v. Hernandez, 31 La. Ann. 158, the syllabus reads:

"Where the plaintiff in suit formally avers that the defendant has collected certain warrants, the property of plaintiff, and prays the defendant's condemnation for the amount of the warrants, he thereby estops himself from subsequently suing another person as the collector of the warrants."

This case is authority for the conclusiveness of allegations in another suit with another party. To the same effect is Walker v. Walker, 37 La. Ann. 107.

In City v. Southern Bank, 31 La. Ann. 560, the city sued the Southern Bank, her former fiscal agent, for the return of certain bonds, or the payment of their value. The bank pleaded that the bonds had gone towards paying an amount which the city was required by law to pay to the police board, and that the city had so pleaded in a suit brought against her by the police board, and that she was now estopped from denying said payment. The court sustained the estoppel, observing, briefly:

"It is a judicial declaration which binds her."

The opinion does not show whether the plea of payment in the police board suit had been made successfully or unsuccessfully. If the former, there would seem to have been the clearest ground for equitable estoppel. If the latter, there was none at all, and the decision would then be counter to the line of decisions holding that pleas founded upon law do not estop when unsuccessful.

In Durham v. Williams, 32 La. Ann. 962, after having sued Mrs. Williams individually for advances made for running a plantation belonging to her minor children, of whom she was tutrix, Durham brought suit against the minors. He was held to be estopped by his previous suit. The case is authority for the proposition that allegations made unsuccessfully in a suit against another party are conclusive, even in the absence of any element of equitable estoppel. The case is in line with Mrs. Elbert v. Wallace & Liddell, supra.

In Gilmer v. O'Neal, 32 La. Ann. 979, a creditor of Gilmer brought an action en declaration de simulation to recover property which Gilmer had bought in the name of Sebastian; and, in defending the suit, Gilmer denied this ownership. Later, when the same creditor seized the property, Gilmer sought to claim it as his homestead; and the court said:

"Gilmer was estopped from contradicting the judicial allegations in his answer in order to reap a new advantage therefrom."

Here there was no equitable estoppel, and therefore the case may be said to be in line with Freeman v. Savage, and Gridley v. Conner, supra.

In Dickson v. Dickson, 33 La. Ann. 1370–1376, held:

"The judicial averments of a married woman, in her suit against her husband, of the sums received by him from her father for her account, estop her from afterwards disputing such sums in a partition suit between her coheirs."

There was here no element of equitable estoppel; and hence the case is authority for the proposition that judicial allegations are conclusive in another suit with other parties.

In State ex rel. Railroad Co. v. Judge, 35 La. Ann. 218–220, the court intimated

that an error of law could be invoked as a means of preventing a loss.

In Stockmeyer v. Oertling, 38 La. Ann. 100, a surety, when sued, averred the nullity of the bond sued on, but was condemned. He then brought suit against his cosurety for his proportion of the bond; and the latter pleaded the averment of nullity in the former suit as an estoppel. The court said:

"They merely, from the condition of things, deduced (they thought legally) their discharge and nonliability. The court corrected their misconception of the law on such a subject, and condemned them to pay, under the obligation which they had contracted. The doctrine of estoppel, however apparently emphatic, is full of exceptions, which vary according to circumstances, and was never designed to apply to a case like the instant one, in which the declaration made, which is an illegal deduction from facts, has led no one astray and occasioned damage to nobody. [Turner v. Edwards, Fed. Cas. No. 14,254] 2 Woods, 435; [Thayer v. Arnold] 32 Mich. 336."

Folger v. Palmer, 35 La. Ann. 743, was a case where the estoppel was founded on the fact that the party sought to be estopped had in a previous suit between the same parties made allegations to his own advantage and the loss of his adversary. But the court announced a much broader doctrine than was necessary to cover the case, thus:

"Our jurisprudence has uniformly recognized and enforced the wise and salutary doctrine, which firmly binds a party to his judicial declarations, and forbids him from subsequently contradicting his statements thus made. Farrar v. Stacy, 2 La. Ann. 221; Gridley v. Conner, 4 La. Ann. 416; Durham v. Williams, 32 La. Ann. 962; Gilmer v. O'Neal, 32 La. Ann. 979; Dickson v. Dickson, 33 La. Ann. 1370."

Pomez v. Camors, 36 La. Ann. 464, is simply to the effect that the party cannot shift his position in the suit itself to an inconsistent one.

In Succession of Harris, 39 La. Ann. 443, 2 South. 39, 4 Am. St. Rep. 269, this court said:

"They claim that Levi J. Harris is estopped, by his judicial declarations and conduct, from disputing that this fund was received for, and belongs to, the succession of Alexander Harris.

We think the estoppel pleaded has no foundation in law or justice. The general doctrine that a party is bound by his judicial declarations and is estopped from subsequently denying them is well established and supported by the numerous authorities cited by the learned counsel for opponents. But as we very recently said in reference to a like plea of judicial estoppel: 'The doctrine of estoppel, however apparently emphatic, is full of exceptions, which vary according to circumstances, and was never designed to apply to a case like the instant one, in which the declaration made has led no one astray and occasioned damage to nobody.' Stockmeyer v. Oertling, 38 La. Ann. 102. The Supreme Court of the United States has said: 'The primary ground . * * * of the previous conduct had denied, when, in the faith of that denial, others have acted. The element of fraud is essential either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up.' Brant v. Virginia, 93 U. S. 335 [23 L. Ed. 927]."

In Gaudet v. Gauthreaux, 40 La. Ann. 186, 3 South. 645, Gaudet sold a plantation to two married women, taking their notes secured by mortgage on the property for the price. The husbands of these women signed the act of sale and the notes for the purpose of authorizing their wives. Gaudet foreclosed the mortgage in proceedings carried on against the wives; but having failed to realize from this sale the full amount of his debt he sued the husbands for the balance remaining unpaid. This he did on the theory (we suppose, since the report does not mention it) that the wives had no separate funds of their own under their separate administration with which to make the purchase, and that consequently the acquisition had been in reality by the community of acquêts and gains which existed between them and their husbands, and that these husbands were liable for the debts of the community The court held that, by the judicial declarations made in his foreclosure proceedings against the wives, Gaudet was estopped from contending that the debt was that of the husbands. Counsel contended that the husbands had not been misled to their prejudice and that therefore there could not be an estoppel. In oth-

er words, that there was no ground for equitable estoppel. The court said:

"The doctrine of estoppel, to which appellant refers, applies exclusively to cases of estoppel en pais, and not to cases of estoppels by recitals, or written admissions, the strongest of which is that of acknowledgments or declarations in judicial proceedings. The law holds parties to their allegations of record. It does not allow them to play fast and loose, to falsify what they have solemnly declared to be a fact —the truth. Such averments are the highest evidence against the party making them. They are not subject to explanation or contradiction ab extra, as a rule; so that what appears to be of record is to be proved thereby only, and nothing conflicting therewith can be admitted. Delacroix v. Provost, 6 Mart. (O. S.) 280; Freeman v. Savage, 2 La. Ann. 269; also Farrar v. Stacy, 2 La. Ann. 211; Denton v. Erwin, 5 La. Ann. 18; Gridley v. Conner, 4 La. Ann. 416; Webster v. Smith, 6 La. Ann. 719; Edson v. Freret, 11 La. Ann. 710; Bigelow on Estoppel, 4 (note) 266 et seq.,—293, Nos. 3 and 4. A previous court has well said: 'It is a well-settled rule in the administration of justice that a party will not be permitted to deny what he has solemnly acknowledged in a judicial proceeding. The only means of courts to protect the integrity of judicial proceedings are the sanctity which the law throws around them.' Bender v. Belknap, 23 La. Ann. 765. See, also, Devall v. Watterston, 18 La. Ann. 141; New Orleans v. Southern Bank, 31 La. Ann. 564; [Chaffe v. Morgan] 30 La. Ann. 1309; [Durham v. Williams] 32 La. Ann. 962, 979; [Dickson v. Dickson] 33 La. Ann. 1370.'"

The case is authority for the proposition that allegations made in another suit between different parties, even in the absence of any element of equitable estoppel, are conclusive against the party who has made them.

In Succession of Déjan, 40 La. Ann. 437, 4 South. 89, where an erroneous date for a marriage had been alleged, the court thought that the error would have been binding if not for the fact that the party making it had taken this date from the pleading of his adversary in another suit.

In Johnson v. Flanner, 42 La. Ann. 522, 7 South. 455 the case is not clearly stated; but, as we understand it, Flanner sold to Johnson on a credit secured by mortgage certain property upon which rested an anterior mortgage which Flanner had assumed when he had purchased the property; and Johnson held the notes secured by this mortgage. Flanner undertook to foreclose his mortgage against Johnson, and Johnson enjoined the foreclosure on the ground that Flanner should first pay this anterior mortgage that had been assumed by him. Flanner replied that this anterior mortgage was a mere simulation, and sought to prove the simulation by parol evidence, and objection was interposed that such proof could be made only by means of a counter letter. The further objection was interposed that the foreclosure proceeding amounted to a judicial declaration of the reality of the sale to Johnson, and that this judicial declaration was a conclusive admission of the reality of this anterior mortgage. Why it was thought that this should have been so is not explained; but it led the court to give expression to the following:

"Besides, the judicial declarations which Flanner has made in the two suits and the exercise of the rights which he asserted therein, and which affirm and reaffirm the sale from him to Johnson as a reality, effectually estop him from denying its seriousness. He cannot be permitted to play fast and loose."

The case would seem to have been one of equitable estoppel.

In Imhof v. Imhof, 45 La. Ann. 706, 13 South. 90, the husband had caused an inventory to be made in the succession of his first wife, and had signed it, showing what property he, as partner in community, then had. This was a few days before the second marriage. In a suit for divorce against the second wife he claimed that said inventory was incorrect; that it should have shown a great deal more property; and estoppel was argued against him. Held, not estopped. The court said:

"There is no doubt that the mortuaria proceedings taken in the matter of the succession of the first wife of the plaintiff are evidence tending to discredit and strongly discredit his present assertion that at the date of his second marriage he had property to the amount of

$10,000, but there is a great difference between 'estoppels' which preclude the advancing of a claim at all, and admission by conduct or presumptions arising from conduct which only render difficult of proof pretensions which are set up ·inconsistent therewith. The defendant in this ·suit was not a party to the proceedings which she invokes, and her rights and her course here in no manner controlled, injured, or affected them so far as the record shows. The mortuaria were admissible in evidence, but when so received they worked no 'estoppel.' Estoppel was not pleaded, and evidence covering the whole ground was introduced without objection. Estoppel resulting from the most solemn adjudications of courts may as such be waived or renounced, unless insisted upon when evidence adverse to them is sought to be introduced.''

In Williams v. Gilkeson-Sloss Co., 45 La. Ann. 1013, 13 South. 394, a customer of the defendants drew a draft on them in favor of the plaintiff Williams, and Williams transmitted it to the defendants to be credited. The defendants credited the draft to 'Williams and charged the amount to the account of their customer. Later they brought suit against their customer and recovered judgment, and caused his property to be seized and sold in satisfaction of the judgment. Williams sued them for the amount of the draft; and they set up as a defense that the draft had been received and the amount of it credited under an agreement by which the amount should be payable to Williams only after the customer's debt should have been fully paid. Held, that their judicial allegations in suing their customer for the amount of the draft (which figured as one of the items of the account of the customer) estopped them from setting up the said alleged agreement. The case presented a large element of equitable estoppel. But the court did not stress that feature, but rested its decision upon the inherent conclusiveness of judicial allegations, even though made in a suit with another party. The court said:

"These undeniable propositions are without force or application in the case at bar, for the reason that the defendants have declared in another suit that the draft was paid and the amount placed to plaintiff's credit. He is not to be heard who alleges things contrary to each other. Edson v. Freret, 11 La. Ann. 710.''

In Lachman & Jacobi v. Block & Bro. et al., 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255, one Lazard, of the firm of Lazard & Co., mailed to the plaintiffs a letter reading:

"I hereby agree to become surety for Henry Block & Bro., for the sum of $10,000 jointly and severally with Henry Block & Bro. This· agreement to bind me in the sum of $10,000 until October 15, 1891.''

Block & Bro. becoming embarrassed, Lazard & Co. brought an attachment suit against them upon an open account, one of the items of which was the $10,000 mentioned in said letter. In the course of the trial of this attachment suit, this part of the demand was discontinued, on the plea of having been incorporated in the demand through error. But this was not done until after Lachman and Jacobi had, in turn, levied an attachment against Block & Bro., and had made amicable demand upon Lazard for the payment of the $10,000. To this demand Lazard had answered asking for time. Afterwards he refused to pay the $10,000 on the plea that this offer contained in his above transcribed letter had never been accepted; and he made the same defense when suit was brought against him. He pleaded in addition that Lachman and Jacobi had induced him by fraud to give said letter of guaranty. Estoppel was pleaded against him, based, first, on the inconsistency between his two pleas of want of acceptance and fraud; and, secondly, on the attachment suit, which was said to have been brought with his full knowledge, since he himself had made the affidavit for the attachment. The majority opinion does not deal with the. first of these grounds of estoppel, but says of the second:

"Finally on this branch of the case, it is pressed on us, the allegations in the attachment suit are judicial confessions within the purview

of article 2291 of the Civil Code. This, in our view, misconceives the judicial confession the subject of that article. It can be invoked as conclusive by the party to the suit in which the allegation is made, and even as to him may be revoked for error of fact. As to those not parties to that suit, the allegations are evidence in their favor, but open to explanation and correction by proof. 1 Greenleaf on Evidence, §§ 206, 212; Mallard v. Carpenter, 6 La. Ann. 397. Of course when any admission or declaration of a party has been acted on by another, [it] can [not] be withdrawn to his prejudice. Then the admission becomes an estoppel. 1 Greenleaf, § 207."

In Godwin v. Neustadtl, 47 La. Ann. 841, 17 South. 471, plaintiff had made a sale to the defendant and taken the defendant's notes for the price. Plaintiff brought a first suit to have the sale decreed to be a simulation; and defendant defeated the suit by pleading that the sale was real. Plaintiff then brought suit on the notes, and defendant pleaded the first suit as an estoppel. The court said:

"The plaintiff in this suit is not estopped, because in the former suit she pleaded that the act of sale was simulated. She tendered that issue to the defendant, who met it by alleging and, through his own answers, proving its reality. The decision of the court closed the question of simulation favorably to defendant, but in doing so it carried with it the disadvantage to him of being subsequently forced to meet the obligation which he assumed in the act then declared to be real. If there be estoppel in this case it is he, not Mrs. Godwin, who is estopped on the issue as now presented. Parties are not bound by allegations unsuccessfully pleaded. Eng. & Am. Ency. of Law, vol. 7, p. 3, note 2; McQueen's Appeal, 104 Pa. 595 [49 Am. Rep. 592]; Appeal of Susquehanna Ins. Co., 105 Pa. 615."

In Vredenburg v. Baton Rouge Sugar Co., 52 La. Ann. 1666, 28 South. 122, the cane crop of the plaintiff having been lost, through the inability of the defendant, as plaintiff alleged, to operate its mill, plaintiff brought suit in damages; and defendant denied that it had been unable to operate its mill. In its answer to a suit brought against it by its manager for his salary, the defendant company had alleged that because of the unskillful and defective work of this man-

ager it had been unable to operate its mill during the most active part of the season. Plaintiff argued that the defendant company was estopped from contradicting the allegation thus made in this former suit. The court said:

"It must be borne in mind that plaintiff was not a party to the suit in question, and, while his answer was admissible, it did not have the effect of concluding the defendant. 'Allegations in a petition and an affidavit for an attachment are admissible only in evidence, but not conclusive in favor of one not a party to the suit; hence such allegations are open to examination and correction by proof of error.' 1 Greenleaf, Ev. § 204 et seq.; Mallard v. Carpenter, 6 La. Ann. 397; Lachman v. Block, 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255."

In Johnson v. Marx Levy & Bro., 109 La. 1036, 34 South. 68, the defendants denied that they were partners. They had alleged themselves to be partners in suits against other parties, and these allegations were urged against them as estoppels. The court said:

"The law holds parties to their allegations of record. Such averments are the highest evidence against those who made them. Nor will they be permitted to deny or contradict that which they thus solemnly declare in a judicial proceeding. Gaudet v. Gauthreaux, 40 La. Ann. 139, 3 South. 645; Williams v. Gilkeson-Sloss Co., 45 La. Ann. 1017, 13 South. 394."

The case is authority for the proposition that judicial allegations are conclusive in suits with other parties.

In Brown, Chipley & Co. v. Haigh, 113 La. 563, 37 South. 478, the syllabus reads:

"Though certain allegations made in a suit brought by A. against B., to which suit C. is no party, may be utilized by C. in a suit between him and A., as containing admissions in his favor, they cannot be urged by him as working an estoppel against A. Between them they are open to explanation and correction."

In Re Immanuel Presbyterian Church, 113 La. 911, 37 South. 873, the allegations invoked as estoppel had been made in the suit itself, and there was no allegation of error.

In State ex rel. Curtis v. Thompson, 117 La. 102, 41 South. 367, the allegations were

given effect as admissions and not as estoppels.

In Doullut v. Smith, 117 La. 491, 41 South. 913, this court said:

"That mere inconsistency in pleading does not estop is included in the rule that one is not estopped by allegations unsuccessfully pleaded. Thus it has been held that one who is defeated in an attempt to recover property alleged to have been conveyed or covered by a simulated title is not estopped thereafter to sue for the price upon the basis of a bona fide conveyance (Godwin v. Neustadtl, 47 La. Ann. 851, 17 South. 471); that defendant who sets up that his title is not valid, when sued for the price, is not estopped to defend his title, when sued for the land (Morgan v. Kinnard, 23 La. Ann. 645); that a bankrupt is not estopped to plead the nullity of a judgment because he has placed it on his schedule in the description list of claims against him (King v. Pickett, 32 La. Ann. 1006). It is true that those were cases in which the inconsistent pleas were set up in different suits, but the principle involved is that where a litigant is entitled to recover in one of two positions, which conflict, he does not, by losing in the one position, estop himself from recovering in the other, merely because it conflicts with the position originally taken; and, where it is the plaintiff who brings inconsistent demands, the only penalty is the dismissal of one of them; though it has been held that: 'Where all the promises and contracts are set out in the pleading, if any one will authorize judgment, the court should render it. Irrelevant or useless matter does not vitiate the good.' Rawle v. Skipwith, 19 La. 207. If the allegations of the defendants which are thought to estop them were susceptible of no other construction than that which has been accepted by our learned Brothers of the Court of Appeal, they are, at worst, merely inconsistent, and, at best, useless and irrelevant."

In Caldwell v. Nelson Morris Co., 120 La. 879, 45 South. 927, 15 L. R. A. (N. S.) 423, 124 Am. St. Rep. 446, 14 Ann. Cas. 1043, and in State ex rel. Breaux v. Judge, 34 La. Ann. 1220, an allegation of residence made in another suit was held conclusive, but the other party in bringing his suit had "acted on the faith" of the allegation in question. Had it been otherwise the allegation could have been withdrawn as erroneous. New Orleans v. Sheppard, 10 La. Ann. 268; Davis v. Welch, 128 La. 785, 55 South. 372.

Finally, in the recent case of Nora Coleman et al. v. Jones & Pickett, 60 South. 243,

131 La. 803, this court, after a review of the authorities, held that a judicial allegation, which has not been acted on, which has led no one astray, does not operate as an estoppel, even as between the parties and with reference to the same subject-matter.

Recapitulating the foregoing, we find that the following cases sometimes cited in support of the conclusiveness of judicial allegations are not in point, to wit: Delacroix v. Prevost, 6 Mart. (O. S.) 280; Vavasseur v. Bayou, 11 Mart. (O. S.) 639; Boatner v. Scott, 1 Rob. 546; Estill v. Holmes, 3 Rob. 134; Hill v. Barlow, 6 Rob. 142; Farrar v. Stacy, 2 La. Ann. 210; Putnam v. Davidson, 3 La. Ann. 266; Jones v. Morgan, 6 La. Ann. 631; Lejeune v. Barrow, 11 La. Ann. 501; Bush v. Dewing, 24 La. Ann. 272; Osburn v. Segras, 29 La. Ann. 291; Reed v. Crocker, 12 La. Ann. 445; City v. Hall, 21 La. Ann. 438; Abbot v. Wilbur, 22 La. Ann. 368; Succession of Anselm, 30 La. Ann. 1145; Byrne v. Hibernia Bank, 31 La. Ann. 81; State ex rel. Railroad Co. v. Judge, 35 La. Ann. 218; State ex rel. Breaux v. Judge, 34 La. Ann. 1220; Pomez v. Camors, 36 La. Ann. 464; Campbell v. Woolfolk, 37 La. Ann. 320; Johnson v. Flanner, 42 La. Ann. 522, 7 South. 455; Caldwell v. Nelson, 120 La. 879, 45 South. 927, 15 L. R. A. (N. S.) 423, 124 Am. St. Rep. 446, 14 Ann. Cas. 1043; In re Immanuel Presbyterian Church, 113 La. 911, 37 South. 873; State ex rel. Curtis v. Thompson, 117 La. 102, 41 South. 367.

And we find that the following cases are authority for the proposition that judicial allegations made in one suit will operate as an estoppel in another suit, even where that other suit is with another party and in connection with a different subject-matter, and even though the party invoking the estoppel has not been led astray thereby or in any way injured (that is to say, even in the absence of all ground for equitable estoppel), but solely on the ground that the court in

vindication of its own dignity will hold parties to their allegations, no matter in what connection made and no matter how clearly not the truth to wit: Freeman v. Savage, 2 La. Ann. 269; Gridley v. Conner, 4 La. Ann. 416; Denton v. Erwin, 5 La. Ann. 18; Webster v. Smith, 6 La. Ann. 719; Edson v. Freret Bros., 11 La. Ann. 710; Pochelu v. Kemper, 14 La. Ann. 308, 74 Am. Dec. 433; Devall v. Succession of Watterston, 18 La. Ann. 136; Bender v. Belknap, 23 La. Ann. 764; Mrs. Elbert v. Wallace & Liddell, 26 La. Ann. 705; Soulie v. Ranson, 29 La. Ann. 161; Judson, Fowler & Stillman v. Stevens, 29 La. Ann. 353; Factors' & Traders' Ins. Co. v. De Blanc, 31 La. Ann. 100; Walker v. Walker, 37 La. Ann. 107; Board v. Hernandez, 31 La. Ann. 158; Durham v. Williams, 32 La. Ann. 962; Dickson v. Dickson, 33 La. Ann. 1370; Folger v. Palmer, 35 La. Ann. 743; Gaudet v. Gauthreaux, 40 La. Ann. 186, 3 South. 645; Succession of Dejan, 40 La. Ann. 437, 4 South. 89; Williams v. Gilkeson-Sloss Co., 45 La. Ann. 1013, 13 South. 394; and Johnson v. Marx Levy & Bros., 109 La. 1036, 34 South. 68. .

And we find that the following cases are authority for the very opposite of this last-mentioned proposition, or, in other words, are authority for the proposition that while allegations made in the pleadings of another suit are always receivable in evidence, they are not conclusive, or operate as estoppel, unless the party who invokes them has been prejudiced in some way by them, to wit: Bore v. Quierry, 4 Mart. (O. S.) 545, 6 Am. Dec. 713; Wells v. Compton, 3 Rob. 171; Mallard v. Carpenter, 6 La. Ann. 397; New Orleans v. Sheppard, 10 La. Ann. 268; Smith v. Harrell, 16 La. Ann. 190; Morgan, Adm'r, v. Kinnard, 23 La. Ann. 645; Ware v. Morris, 23 La. Ann. 665; Chaffe & Bro. v. Morgan, 30 La. Ann. 1307; Watkins v. Cawthorn, 33 La. Ann. 1194; Stockmeyer v. Oertling, 35 La. Ann. 467; Succession of Harris, 39 La. Ann. 443, 2 South. 39, 4 Am. St. Rep. 269; Imhof v. Imhof, 45 La. Ann. 706, 13 South. 90; Lachman & Jacobi v. Block & Bro., 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255; Godwin v. Neustadtl, 47 La. Ann. 841, 17 South. 471; Vredenburg v. Baton Rouge Sugar Co., 52 La. Ann. 1666, 28 South. 122; Brown, Chipley & Co. v. Haigh, 113 La. 563, 37 South. 478; Doullut v. Smith, 117 La. 491, 41 South. 913; Davis v. Welch, 128 La. 785, 55 South. 372; Coleman v. Jones & Pickett, 60 South. 243, 131 La. 803.

And that we also have a line of cases to the effect that allegations of law unsuccessfully made in a former suit do not estop. Hornor v. McDonald, 52 La. Ann. 406, 27 South. 91; Godwin v. Neustadtl, 47 La. Ann. 850, 17 South. 471; Stockmeyer v. Oertling, 38 La. Ann. 100; Behrman v. La. Ry. & Nav. Co., 127 La. 775–794, 54 South. 25.

In the foregoing review of our jurisprudence we have not sought to include cases involving mere inconsistency in pleading, except those which we found were cited in the other cases as instances of estoppel by judicial allegation. By inconsistency in pleading we here mean inconsistency between two pleas in the same case. The expression made use of in a number of decisions not included in the foregoing review that a party cannot be allowed to occupy in court at the same time two inconsistent positions are really not pertinent to the question which we have under consideration in the present suit, which is whether allegations of fact made in another suit may be invoked as estoppels by a stranger who has not been prejudiced by them. Nor, it is needless to say, are those other cases in point where a party's express admissions made in the suit itself for the purpose of dispensing the opposite party from offering evidence on the point admitted or from presenting argument upon it have been held to be conclusive, or, in other words, to operate as estoppels.

There can be no denying that in many cases which we have reviewed above the reason assigned for judicial allegations to be held conclusive would be equally applicable to a case where the estoppel was being invoked in another suit and by a stranger who had not been prejudiced thereby. That reason, as stated in Denton v. Erwin, supra, and repeated in several of the cases cited, supra, is that the policy of the law imposes upon every man the obligation to speak and act according to the truth; and that the courts, for the protection of their own dignity, throw a sanction around judicial allegations, which will not allow of their being thereafter contradicted. But that reason has not been recognized by the courts in general as a ground of estoppel, and we find that this court clearly repudiated it in Stockmeyer v. Oertling, 38 La. Ann. 100, though without referring to it, when it held that allegations of law unsuccessfully made in a former suit do not estop, and in the case of Lachman & Jacobi v. Block Bros., 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255, when it held that judicial allegations operate as estoppels only when they have been acted on by the party invoking them as such, and in the recent case of Coleman et al. v. Jones & Pickett, 60 South. 243, 131 La. 803, where the rule on this point was formulated in the language of Greenleaf, par. 207:

"Admissions, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person, whose conduct he had thus influenced."

Some decisions, supra, went so far as not to allow judicial allegations to be retracted, even where made in error, and although the party invoking them as estoppels has not been prejudiced by them; thus overlooking, or not heeding, article 2291 of the Code, which expressly allows judicial allegations to be retracted when made in error of fact,

even in the suit itself in which they are made.

This article, by the way, has reference only to the judicial confession made in the suit itself, either in the pleadings, or in the note of evidence, for the purpose of dispensing from taking evidence upon the fact admitted; it has no reference to confessions, or admissions, made in other suits. The latter can be classed only as extrajudicial confessions, or admissions which are evidence but not conclusive presumptions, or estoppels. That point divided at one time the courts and jurists of France, but may now be said to be practically settled in the sense just stated. The discussion of this point on the French books is interesting reading, but this opinion is already so long that we will content ourselves with giving here the following taken from Carpentier and Du Saint, Juris. Gen. Vo. Aveu, Nos. 139 and 140, which fairly sums up the result:

"Does the confession of a party in one suit make complete proof against him in another suit? On this question both the courts and the text-writers are to-day divided. A majority of the latter hold that a confession being merely evidence can only have a relative effect, as is the case with all evidence of a judiciary character; it has, therefore, the force of a legal presumption only in the suits in the course of which it has been made. And so the court of Cassation now holds, unanimously, that the judicial confession can have the force of a legal presumption only in the suit in which it has been made."

Said article 2291 is an exact translation of article 1356, C. N.

At common law the point has never been doubtful; the rule has always been that while admissions made in other suits are of course evidence, as being declarations against interest, and therefore presumably true, they are no more conclusive, or estoppels, than admissions made out of courts. In fact, the only doubt has been as to whether they were admissible in evidence at all, when contained in pleadings at law, owing to the necessity

under which a party often finds himself in his pleadings at law to make statements not because of his knowing them to be true, but in order to meet possible contingencies, or developments, in the case, with regard to which he has no information and yet is required to plead with positiveness of assertion. On the point of "admissibility and conclusiveness against pleader, in subsequent action with strangers, of admissions in pleadings," see a very satisfactory note in 18 Ann. Cas. p. 79, where both the American and English cases are collated. See, also, 16 Cyc. 1050.

In the same connection we may profitably quote the following from the recent work of Chamberlayne on Evidence:

"Sec. 1233. *Judicial and Extrajudicial.*— The judicial admission is one made on the record or in connection with the judicial proceedings in which it is offered in evidence. An extrajudicial admission is one in pais, not made in court for the purpose of the case on trial in which it is offered. An admission made in the course of judicial proceedings in a case other than that in which it is offered, though of record or in connection with judicial proceedings in another case, is properly classed as extrajudicial.

"Sec. 1241. *Formal Judicial Admissions— Limitations upon Effect.*—The effect of a formal judicial admission is limited to the purposes of the pending trial, and, if so worded, to those of additional trials, or proceedings, if any, growing out of or otherwise connected with the principal case. Unless an extended vitality in other cases is thus created by the terms of a formal admission, the operative force which procedure conferred on it for the purposes of the trial falls away upon its transfer to another cause.

"It then becomes, in its new environment, simply a statement which the party has made and which is to be weighed solely upon the basis of logic, by determining how justifiable or necessary is the inference that the party made the declaration because it was true. When thus considered the circumstances under which the judicial admission was made may be such as to deprive it of all force whatever. The general rule is that, unless such admissions are closely identified with the party or expressly ratified by him, their operation will not be extended to other cases, by implication. * * * Nor will such an admission continue to operate in the case itself after having been withdrawn.

"Sec. 1263. *Informal Judicial Admissions.*— The informal judicial admission is less abso-

lutely the creature of procedure than is one of the more solemn class ranked as formal. Under the general denomination of informal judicial admissions may be grouped statements of probative or res gestæ facts made by a party in proceedings in court, as a witness, as a deponent, an affiant, or in any similar connection. * * * The informal judicial admission is classed as judicial simply because made in the course of judicial proceedings by one who was then a party to the latter. When the declarant is not a party to the pending proceedings, as where a witness gives his testimony in the case, they may be received as admissions, so far as they relate to a probative or res gestæ fact, in any case where the declarant is himself a party but not as judicial admissions, informal or otherwise.

"Sec. 1264. *Informal Judicial Admissions— Probative Force.*—Little difficulty, as a rule, exists in determining the probative force of an informal judicial admission, so far as it involves the direct statements by the party himself. As between formal and informal judicial admissions the effect, for the purposes of the trial in which they are made, is determined by procedure. When the attempt is made to use them, in another cause, as extrajudicial admissions the difference in probative force is entirely one of logic. Indeed, the informal admission, as being more closely identified with the party and more probably made because deemed to be true, may have a greater probative weight than the formal. In the case in which it was given, the informal judicial admission is accorded by procedure the force of a levamen probationis, the quality of prima facie proof shifting the burden of evidence. In subsequent cases, the statements of a party made as informal judicial admissions are divested of any evidentiary valuation affixed by procedure on the occasion when originally given. They are received again as the declarant as his admissions, and, so far as competent at all, are given probative force solely according to their logical value."

In connection with his treatment of the maxim "Omnia contra spoliatorem," the same learned author has the following to say in regard to the court's refusing to hear evidence because of the supposed necessity of vindicating its dignity:

"Sec. 1070. e. *Omnia Contra Spoliatorem— Spoliation an Insult to the Court.*—It is quite possible to regard spoliation not only as a deliberative fact but as constituting a serious contempt of court. Suppression and fabrication are offenses against the administration of justice and an insult to the dignity of the tribunal which the act or omission in question is designed improperly to effect. Obviously, it is merely with the first of these points of view that the law of evidence is concerned. The

justice or propriety of penalizing the offender, beyond the logical effect of his conduct in the case itself, and his punishment, so far as the acts are criminal, upon direct proceedings, appears to be open to grave doubt. That a court of justice should 'strike back' at one attempting fraud upon the purity of its proceedings by depriving him of a fair consideration of the real merits of his case does not seem consistent with its dignity. The sounder rule of judicial administration seems to be to the effect that the situation as developed should not be extended beyond its logical bearings and that a litigant ought not to be deprived of his legal rights by refusing to receive other and relevant evidence in his favor, unless, indeed, the jury would not, as a matter of reason, be justified, after the disclosures, in acting favorably upon it."

Our conclusion is that Weaver and Johnson, the warrantors, are not concluded by the allegations made in this former suit, which have in no way been acted on by plaintiffs, or in any way prejudiced them, and therefore do not give rise to any estoppel. These allegations carry some weight, of course, as evidence; but their weight as evidence is overborne by that of the other facts proved in the case, especially by the fact that Julia Smith was a slave, and, therefore, could not contract marriage with a free man.

The judgment of the Court of Appeal and of the district court are set aside, and the suit of plaintiffs is dismissed, plaintiffs to pay all costs.

The CHIEF JUSTICE and MONROE, J., dissent.